This is an original petition to this Court for a writ of mandamus directed to Honorable Fred W. Nicol, Circuit Judge of the Sixth Judicial Circuit, to review a ruling made by him that overruled a prior motion to quash service of process and to order him to re-enter his original order granting the motion of petitioner, Volkswagenwerk Aktiengesellschaft (VWAG), to quash service.
VWAG, a German corporation, contends that the purported service of process is invalid for two reasons: (1) service of the summons and complaint by certified mail on VWAG pursuant to Rule 4.4 (b) of the Alabama Rules of Civil Procedure is illegal, since the provisions of the "Service Abroad of Judicial and Extrajudicial Documents" (the Hague Convention),opened for signature November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, govern the service of process on corporations located in countries which are signatories of the convention, and (2) service of process on Volkswagen of America (VWoA) as the agent of VWAG is improper because VWoA is merely a subsidiary of VWAG and has no authority to accept service of process on behalf of VWAG.
We need not address the first issue. The respondents, Judge Fred Nicol and David K. Brown, have admitted, in their brief in support of their answer to the petition for writ of mandamus, that the provisions of the Hague Convention must be complied with if service of process is attempted directly on VWAG in West Germany. These provisions were not complied with here. Nevertheless, they contend that the Hague Convention's provisions are inapplicable in this case, since VWoA is the alter ego, and therefore the agent, of VWAG in the United States for the purpose of service of process.
Our inquiry, then, is limited to the issue of whether VWoA can be considered the agent of VWAG for the purpose of service of process; if so, then the summons and complaint served on VWoA on the behalf of VWAG is good and sufficient service on VWAG. After careful consideration of the salient facts involved, we conclude that the trial court was correct in overruling its prior grant of the motion to quash and we, therefore, deny the writ of mandamus.
Prior to a review of the facts and arguments in this case, it is necessary to address the issue of whether it is proper for this court to review the record below on a writ of mandamus.
In Ex parte Helveston, 267 Ala. 94, 100 So.2d 7 (1957), this court stated that the writ of mandamus is not the proper vehicle for the review of a denial of a motion to quash service, since the dispute over proper service can be settled on appeal. Again, in Orkin Exterminating Co. of North Ala. v.Krawcheck, 271 Ala. 305, 312, 123 So.2d 149, 156 (1960), it was stated on rehearing that "[w]e do not review the action of the trial court in refusing to quash the summons *Page 882 
in such a case by extraordinary writs. The error, if any, must be raised on appeal from the final judgment." However, we have allowed review by extraordinary writ, even in the face of a clear prohibition of its usage, where the issue or issues presented also raised matters of substantial importance. In Exparte Taylor Coal Co., Inc., 401 So.2d 1 (Ala. 1981), this court was presented with a petition for a writ of mandamus to direct a trial judge to disqualify attorneys representing the defendants. Even though we noted several cases stating that mandamus does not lie to review a judge's acts of discretion, this court proceeded to review the facts of the case, since serious charges of ethical violations were leveled at the attorneys involved. Id. at 3.
Although the matter before the trial court in the instant case was solely within the discretion of the trial judge, we find this case to present a matter of importance beyond the basic issues in dispute. As stated by both parties, if service of process on VWoA as the alter ego of VWAG is not good and sufficient service on VWAG, then requiring VWAG to submit to the trial court's jurisdiction would be in disregard of the provisions of the Hague Convention[1] and, therefore, in violation of the Supremacy Clause of the United States Constitution, Article VI, clause 2.[2] This is so because a convention, such as the Hague Convention, "has the status of a treaty and consequently is the supreme law of the land. . . ."American Trust Company v. Smyth, 247 F.2d 149, 153 (9th Cir. 1957).
If the writ of mandamus is denied, the only other method of attack open to the petitioner is to defend itself at trial, obtain a final judgment, and then appeal. To deny the writ, then, without consideration of VWoA's agency, would be to force VWAG to defend itself in a court that possibly lacks jurisdiction over it; this would be a denial of the German corporation's right to due process in American courts. As the writ of mandamus lies when no other adequate remedy is available, Martin v. Loeb Co., Inc., 349 So.2d 9 (Ala. 1977), and believing that to require VWAG to continue to final judgment could be in derogation of a treaty of the United States, we proceed to a review of the facts and arguments of the case.
Respondent, David K. Brown, the father of the deceased Richard Paul Brown and the administrator of his estate, filed an action for personal injuries against VWoA, VWAG, Haun Motors, Inc., Frank D. Burns, and numerous fictitious defendants on May 5, 1981. The event which gave rise to the complaint was an automobile accident which occurred on or about May 6, 1979. Richard Brown, a passenger in a Volkswagen van, was fatally injured when the van was hit from the rear by a motor vehicle operated by Frank Burns.
Respondent's first service of process on VWAG, sent by registered mail to the corporation's headquarters in Wolfsburg, West Germany, was refused. Service was then attempted on VWAG by ordinary mail on or about July 10, 1981. On September 8, 1981, service was attempted by certified mail, return receipt requested, on VWoA as the agent for VWAG in the United States, pursuant to the Alabama long-arm statute, ARCP 4.2.
After three hearings regarding VWAG's motion to quash service, the trial court found that service on VWoA constituted good and sufficient service on VWAG.
Petitioner VWAG alleges that the trial court has not acquired personal jurisdiction over it by its service of VWoA as agent for VWAG since VWoA is a separate entity *Page 883 
and has no authority to accept service on behalf of VWAG. Respondent claims that VWoA is completely controlled by VWAG and is therefore its alter ego. If the latter assertion is found to be true, then service on VWoA is good and sufficient service on VWAG.
The facts as reflected in the record below, and as set out in this opinion, amply justify the conclusion reached by the trial court. We hold that service upon VWoA as agent of VWAG was good and sufficient service on VWAG.
VWAG is a corporation organized and existing under the laws of the Federal Republic of Germany. It manufactures Volkswagen automobiles, as well as individual VW parts and accessories, which it sells to importers from over 100 countries. The transactions take place in West Germany; that is, payment for the products and the subsequent title transfers occur in VWAG's country of incorporation. VWoA, a New Jersey corporation, is a wholly owned subsidiary of VWAG; in other words, VWAG owns all of the issued and outstanding shares of VWoA.
As support for their respective positions, both parties utilize the written "Importer Agreement," which governs the relationship between VWAG and VWoA. The language relied on by petitioner provides:
 Importer (VWoA) will transact all business pursuant to this agreement on its own behalf and for its own account; it has no power or authority whatsoever to act as agent or otherwise for or on account or on behalf of Volkswagenwerk A.G. (VWAG).
Although this language is persuasive, the agreement considered in its entirety clearly indicates VWAG's control over the operations of VWoA. The agreement further provides:
 [VWoA] will appoint at locations to be approved by VW[AG] such number of dealers as may correspond to the request of VW[AG]. . . .
 [VWoA] shall furnish to VW[AG] its orders . . . for the periods and at the time or times determined by VW[AG] and shall use therefor the forms prescribed by VW[AG]. All such orders may be accepted or rejected by VW[AG] in writing.
 VW[AG] shall not be under any liability whatsoever toward [VWoA] for failure to deliver under, or for delay in making delivery pursuant to, orders of [VWoA] accepted by VW[AG]. . . .
 At and around its premises [VWoA] shall conspicuously display a sufficient number of Volkswagen Signs in accordance with the directives of VW[AG].
 . . . [VWoA] shall use for its Volkswagen business only stationery and business forms printed in accordance with the requests of VW[AG].
 VW[AG] will employ a number of competent office employees and business fieldmen sufficient in the opinion of VW[AG] to secure supervision of solicitation by dealers appointed by it of all potential customers for VW[AG] Products. . . .
 [VWoA] will employ such number of competent office employees and technical fieldmen as, in the opinion of VW[AG], may be required to assure prompt and satisfactory customer's service. . . .
 VW[AG] shall sell VW[AG] Products to [VWoA] at such prices and upon such terms as may from time to time be established by VW[AG]. . . . In the event of any increase of the prices established by VW[AG], [VWoA] agrees to pay such increased prices for all VW[AG] Products delivered after the effective date of such increase, even if its orders may have contained lower prices.
 Each VW Automobile sold by VW[AG] to [VWoA] . . . will be warranted by [VWoA] to the ultimate consumer in accordance with . . . [warranties prescribed by VW(AG)] . . . as the same may from time to time be amended by [VWoA] with the consent of VW[AG].
 . . . VW[AG] shall have the right . . . to inspect [VWoA]'s records and accounts. . . .
 [VWoA] will report to VW[AG], in accordance with VW[AG] requests, for instance, about market conditions, sales *Page 884 
performance, inventories and estimates of requirements, and will submit to VW[AG] its yearly and interim financial statements.
 VW[AG] . . . [is] the beneficial owner of [VWoA] in the following proportion[s]: . . . One hundred percent. . . . [VWoA] agrees that there shall be no voluntary change in such beneficial ownership without prior written consent of VW[AG].
In addition, the Board of Directors of VWoA, of which many of the directors are also on the Board of Directors of VWAG, holds almost all of its meetings in Wolfsburg, West Germany, the situs of VWAG's corporate headquarters.
The existence of personal jurisdiction depends on the presence of (1) perfected service of process giving notice to defendant of the suit being brought, Mullane v. Hanover TrustCo., 339 U.S. 306, 313-314, 70 S.Ct. 652, 656-657, 94 L.Ed. 865
(1950), and (2) sufficient minimum contacts between the forum state and the defendant so as to render it just and reasonable to force the defendant to come to the forum state to defend the suit. Kulko v. California Superior Court, 436 U.S. 84, 91,98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1977). There being no dispute concerning the requisite minimum contacts of VWAG with Alabama, the only issue before us is whether the first prong of the test for personal jurisdiction has been satisfied in this case. Has VWAG been given notice of the suit against it by perfected service of process?
When the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed correctly and legally. In the present case, since the disputed issue is whether VWoA is the agent or alter ego of VWAG, the respondent must establish the alleged agency of VWoA. Amen v.City of Dearborn, 532 F.2d 554, 557 (6th Cir. 1976).
In Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333,45 S.Ct. 250, 69 L.Ed. 634 (1925), the Supreme Court held that service of process on a proper agent of a subsidiary corporation may constitute sufficient service on the parent corporation. However, the parent-subsidiary relationship alone is not ordinarily enough to establish agency for the purpose of service of process. Jones v. Volkswagen of America, Inc.,82 F.R.D. 334, 335 (E.D.Tenn. 1978).
The party seeking to prove proper service must at least show that the parent corporation "exercises such control and domination over the subsidiary that it no longer has a will, mind or existence of its own, and operates merely as a department of the parent corporation." Professional InvestorsLife Ins. Co., Inc. v. Roussel, 445 F. Supp. 687, 698 (D.Kan. 1978). Alternatively, the party seeking to have service on the subsidiary and the parent may show that
 [T]he parent corporation has complete control over the subsidiary, conducting its business and creating its policies . . . (or the subsidiary) is a mere adjunct and instrumentality of the parent . . . (or the) subsidiary corporation is merely a "dummy" by means of which the parent corporation does business in the state. . . .
Fletcher's Cyclopedia of the Law of Private Corporations, § 8773 at 527-528, cited in, Stoehr v. American Honda Motor Co.,Inc., 429 F. Supp. 763, 766 (D.Neb. 1977). Hence, as the court in Stoehr, supra, noted, inquiry regarding the agency of a subsidiary is essentially a factual one. Id. at 766.
Three recent cases cited by petitioner, Utsey v.Volkswagenwerk, A.G., Nos. 80-1620-9, 80-1621-9 (D.S.C. Sept. 18, 1981); Hamilton v. Volkswagenwerk, A.G., Nos. 81-01-L, 80-594-D (D.N.H. June 10, 1981); and Richardson v.Volkswagenwerk, A.G., 552 F. Supp. 73 (W.D.Mo. 1982), as standing for the proposition that VWAG and VWoA are separate and distinct entities, and that VWAG cannot be served through VWoA, are distinguishable. The court in each case established that the controlling issue was whether the plaintiff had submitted sufficient proof of a high degree of control over VWoA by VWAG. In each case the plaintiff *Page 885 
failed to present evidence to counter the affidavit submitted by the defendant in support of the contention that VWoA and VWAG were separate corporations with no intertwining of operations. This is not true in the instant case.
Respondent has submitted overwhelming evidence of the high degree of control had by VWAG over the internal affairs of VWoA. Numerous requirements in the "Importer Agreement" show that VWAG determines how VWoA operates on a daily basis. Although petitioner has demonstrated that VWoA hires and fires its own employees, is adequately capitalized, maintains its own bank accounts, and purchases products from other manufacturers, these factors merely indicate that the parent and subsidiary are formally structured as two separate corporations.
For all of the above reasons, we conclude that service performed on VWoA as the agent in fact of VWAG was good and sufficient service on VWAG. We, therefore, find that the trial judge did not abuse his discretion in deciding not to quash the summons. As the writ of mandamus may not issue to compel the exercise of judicial discretion in a particular manner, East v.Todd, 284 Ala. 495, 226 So.2d 153 (1969), we accordingly deny the writ and we affirm the judgment of the trial court.
WRIT DENIED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., concurs specially.
[1] The Hague Convention requires that the document be sent to the designated Central Authority of the foreign country where the foreign corporation is located. The Central Authority serves it, or arranges to have it served, on the party in question. Germany, as a signatory of the Convention, also requires that the document be translated into the German language. In this case, the service of process, written in English, was mailed directly to VWAG at its corporate headquarters.
[2] The Supremacy Clause states that ". . . all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land. . . ."