620 So.2d 606 (1993)
HORIZONS 2000, INC.
v.
Grady SMITH and Virginia Smith.
1911514.
Supreme Court of Alabama.
April 30, 1993.
Judy Harrison Barganier, Montgomery, for appellant.
Louis C. Rutland, Union Springs, for appellees.
KENNEDY, Justice.
The defendant, Horizons 2000, Inc. ("Horizons"), appeals from the denial of a Rule 60(b)(4), Ala.R.Civ.P. motion for relief from a judgment in favor of the plaintiffs, Grady and Virginia Smith.
Horizons is a group of approximately 150 European investors, organized as a corporation under the laws of Delaware. In January 1985, Grady and Virginia Smith executed a lease agreement with Horizons, leasing to Horizons land in Bullock County for growing pecans. Horizons had previously leased other property in Bullock County for the same purpose. Horizons had utilized the services of Gus Tompkins, of Fitzpatrick, to perform various odd jobs for it relative to that other property. According to Tompkins's testimony, he had agreed to do some "contract work" for Horizons about a year before the Smith lease; he said he had agreed to "clean up the groves ... and do some spraying."
The record does not indicate when, but at some point thereafter, the vice-president of Horizons, Henry Chmielewski, started sending work requests to Tompkins from England. For his services, Tompkins was paid by the job, with a fixed fee per job, negotiated on a job-by-job basis. Tompkins provided any fuel necessary on these jobs, but had use of Horizons equipment, which he stored at his home.
Also, at some point Tompkins permitted property tax assessments for Horizons on *607 its Bullock County holdings to be directed to Tompkins, who presumably forwarded the assessments to Horizons in England.
On October 2, 1991, the Smiths sued Horizons, alleging breach of the lease agreement. On October 5, 1991 a summons and the Smiths' complaint against Horizons were served by personal service on Tompkins. According to the Smiths, Tompkins took the complaint to their attorney and requested that their attorney fax it to Horizons in England. In fact, Horizons did not learn of the lawsuit until many weeks later, after a default judgment had been entered against it in November 1991. The record is unclear as to how the fax request was handled. However, it is undisputed that, except for the service on Tompkins in October 1991, Horizons had no actual or constructive notice of the lawsuit until December 1991.
After learning of the default judgment, Horizons moved, pursuant to Rule 60(b)(4), to have the judgment set aside as void. Horizons argued that it had never been served with a notice of the action and that the trial court had rendered a judgment without personal jurisdiction.
One of the requisites of personal jurisdiction over a defendant is "perfected service of process giving notice to the defendant of the suit being brought." Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 884 (Ala.1983). "When the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed correctly and legally." Id. A judgment rendered against a defendant in the absence of personal jurisdiction over that defendant is void. Satterfield v. Winston Industries, Inc., 553 So.2d 61 (Ala.1989).
The Smiths say that the corporation was served by the personal service on Tompkins. Personal service on a corporation, "either domestic or foreign," can be had "by serving the agent authorized by appointment or by law to receive service of process." Ala.R.Civ.P. 4(c)(6). It is undisputed that Tompkins had no express authorization to receive service of process on behalf of Horizons. The issue here, as it was in the trial court, is whether service on Tompkins was adequate to constitute service on Horizons; specifically, the Smiths argue that Tompkins was the authorized agent of Horizons, because, they say, Tompkins was "controlled" by Horizons.
In considering the Rule 60(b) motion, the trial court heard ore tenus evidence regarding service of process, and implicit in its denial of the motion was the conclusion that Tompkins was the authorized agent of Horizons for service of process. "When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside." Insurance Mgt. & Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 212 (Ala.1991).
This Court has, at least once before, discussed a situation where, by virtue of one party's dominion over another, the status of "authorized agent" is imputed to that second party. In Volkswagenwerk, 443 So.2d at 884, we stated that where a subsidiary is merely an alter ego of a parent corporation, the subsidiary can be deemed an agent for service of process on the parent corporation. However, we indicated that the plaintiff, to show service, must present "proof of a high degree of control" by the parent corporation over the subsidiary. Id. at 884. We cited Professional Investors Life Ins. Co. v. Roussel, 445 F.Supp. 687, 698 (D.Kan.1978), for the following proposition:
"The party seeking to prove proper service must at least show that the parent corporation `exercises such control and dominion over the subsidiary that it no longer has a will, mind or existence of its own, and operates merely as a department of the parent corporation.'"
443 So.2d at 884.
Applying the rule of Volkswagenwerk to the present case, we hold that the trial court erred.[1] It is fairly debatable whether *608 Tompkins was "controlled" in a respondeat superior sense, as the Smiths say he was, or whether he was an independent contractor for Horizons, as Horizons says he was. However, Volkswagenwerk indicates that the plaintiff must show that the defendant exercised a "high degree of control" over the alleged agent in order for the court to imply the authority to be an agent for service of process; certainly, Volkswagenwerk would require much more control than would suffice to support an imposition of liability under the doctrine of respondeat superior. Although there may be some evidence of slight "control" in this case, the plaintiffs presented no evidence that Horizons had the "high degree of control" over Tompkins necessary to support a finding that he had authority to accept service of process for Horizons.
We hold that the judgment against Horizons was entered in the absence of personal jurisdiction and that it is therefore void. The trial court should have granted the Rule 60(b) motion.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, STEAGALL and INGRAM, JJ., concur.
MADDOX, SHORES and ADAMS, JJ., dissent.
MADDOX, Justice (dissenting).
I would affirm the judgment of the trial court because I firmly believe that the service of process in this case was sufficient to give that court jurisdiction over the defendant foreign corporation and that that court's exercise of its discretion to refuse to set aside the default judgment should not be overturned.
It seems apparent to me that the defendant Horizons 2000, Inc., a corporation organized under the laws of the State of Delaware and composed of a group of approximately 150 European investors, had sufficient contacts with the State of Alabama to give an Alabama court personal jurisdiction of it. Further, in view of the particular status of the person who was served with process in this case, I believe that the service was sufficient.
The facts leading me to this conclusion are as follows: Horizon leased land from the plaintiffs for the growing of pecans. Gus Tompkins was retained by Horizons to perform various odd jobs, such as maintaining the groves and spraying the leased property. At some point, Horizons began faxing work requests to Tompkins from England. For his services, Tompkins was paid by the job, with a negotiated fixed fee per job. Tompkins provided fuel necessary on these jobs, but he had the use of equipment belonging to Horizons. This equipment was stored at his home. Tompkins also received the property tax assessments on the property, which he presumably forwarded to Horizons in England. Tompkins was also authorized to sign checks for Horizons. Based on these facts, the trial court concluded, as do I, that Tompkins was more than just a farmhand and that he significantly acted for and on behalf of the corporation, as the corporation's agent, and that the corporation did sufficient acts to indicate its reserved right of control.[2]
According to the plaintiffs, Tompkins took the complaint to the attorney for the plaintiffs and requested that the plaintiffs' attorney send a facsimile of the complaint to Horizons in England. Even though Horizons did not learn of the lawsuit until after a default judgment had been entered against it, and although it is not clear how the facsimile request was handled, it is undisputed that except for the alleged service on Horizons through Tompkins in October 1991, Horizons did not otherwise *609 have actual or constructive notice of the lawsuit until December 1991. However, there is no suggestion made that the attorney for the plaintiffs agreed to send the pleadings to Horizons, or that the attorney made to Tompkins any misrepresentations that he relied upon to the detriment of Horizons.
The majority holds that the service of process was insufficient to give Horizons notice, because Horizons did not exercise such a "high degree of control" as to make Tompkins an agent of Horizons for service of process. I believe that the plaintiffs proved to the satisfaction of the trial judge that Horizons exercised such control and dominion over Tompkins that the court could find that he was an agent of Horizons upon whom service of process could be made.
Based on the foregoing, I must disagree with the result reached by the majority. I believe in vesting in the trial judge a broad discretion to determine whether the processes emanating out of the court are being evaded or ignored. The trial judge has passed judgment on this issue and I would affirm his judgment. Consequently, I must respectfully dissent.
NOTES
[1] In so stating, we assume, arguendo, that the law would in this context impute "authorized agent" status. Horizons very briefly alludes to this issue in a footnote to its argument on appeal. Given the lack of discussion or analysis of this question by the parties, we do not address it here.
[2] Horizons argues that Tompkins was an independent contractor. I believe that there is a substantial question presented on the issue whether Tompkins was an "agent" or an "independent contractor." If Tompkins, for example, had allegedly caused injury to someone in connection with his duties, I believe that it would be a jury question whether Tompkins was an agent of Horizons. See, Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970).