CRAWLEY, Judge.
Plantation Pontiac-Cadillac, Buick, GMC Truck, Inc., and William Booth (referred to collectively as.“the dealership”) sued General Motors Corporation (“GM”) for conversion. The dealership attempted to serve GM by certified mail at a post-office-box address to which the dealership remitted payments. The post-office-box address corresponded to a “lock box” at First Chicago Bank, where payments were sent for deposit. GM failed to answer the dealership’s complaint, and a $74,500 default judgment was ultimately entered against it on January 22, 1998. GM first received notice of the lawsuit in June 1998. After settlement negotiations failed, GM moved to set aside the default judgment under Rule 60(b)(4), Ala. R. Civ. P., arguing that the judgment was void for lack of proper service. The trial court denied GM’s motion.. GM appealed to the Alabama Supreme Court, which transferred the case to this court, pursuant to Ala. Code 1975, § 12-2-7(6). We reverse and remand.
GM argues that the dealership failed to properly serve it as required by Rule 4(c), Ala. R. Civ. P., which reads:
“(c) Upon Whom Process Served. Service of process ... shall be made as follows:
[[Image here]]
“(6) Corporation. Upon a corporation, either domestic or foreign, by serving the agent authorized by appointment or by law to receive service of process or by serving the corporation by certified mail at any of its usual places of business or by serving an officer or an agent of the corporation....”
GM contends that the dealership’s purported service at the “lock box” was not service on an agent of the corporation and was not service by certified mail at its usual place of business. Therefore, it concludes, service was not perfected and the default judgment is void.
The dealership, however, argues that GM was properly served in accordance with Rule 4.2(b)(1)(A), Ala. R. Civ. P., *861 which provides for service by certified mail. The rule instructs “[t]he clerk [to] place a copy of the process and complaint ... in an envelope and [to] address the envelope to the person to be served at that person’s last known address with instructions to forward.” Rule 4.2(b)(1)(A). Thus, the dealership urges, it was required only to send the summons and complaint by certified mail to the last known address it had for GM, regardless of whether that address was a usual place of business for GM. In addition, the dealership contends that the “lock box” was indeed a usual place of business and that service at the “lock box” also amounted to service on an agent of the corporation.
Our review of the grant or denial of a Rule 60(b)(4) motion is de novo. Northbrook Indemnity Co. v. Westgate, Ltd., [Ms. 1980619, April 21, 2000]— So.2d-(Ala.2000). “When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside.” Horizons 2000, Inc. v. Smith, 620 So.2d 606, 607 (Ala.1993). “When the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed cor-r rectly and legally.” Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 884 (Ala.1983).
The dealership argues that it was required only to serve GM by certified mail at its last known address, pursuant to Rule 4.2(b)(1)(A), and that the requirements of Rule 4(c)(6) are no longer applicable to service on an out-of-state corporation, which, it says, must be served by certified mail. Although the supreme court has not spoken directly to the issue raised by the dealership, it has essentially answered the argument by explaining who bears the burden of proof when a challenge to service of process is made. See Northbrook Indemnity, — So.2d at-n. 4. The dealership argues that Rule 4.2, which explains service by certified mail on foreign corporations, somehow negates the requirements of Rule 4(c)(6), which explains “upon whom process [is to be] served.” The supreme court explained that when service of process is challenged, “a presumption of service in accord with Rule 4.2(b)(1) arises upon a showing of the certified mail return receipt and ‘the circuit court, clerk’s notation [on the docket sheet] that the process has been properly mailed.’” Id. (quoting Insurance Management & Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 213 (Ala.1991)). However, the supreme court distinguished the Rule 4.2(b)(1) presumption created in Palomar Insurance from a presumption that service was in compliance with Rule 4(c)(6). Id. Therefore, contrary to the dealership’s argument, service of process, to be valid, must be in compliance with both Rule 4.2(b)(1) and Rule 4(c)(6).
To determine whether the default judgment was void for lack of service, then, we must consider whether the “lock box” to which the process was mailed was a “usual place of business” for GM or whether “acceptance” of that process by an employee of the bank at which the “lock box” was maintained was service on an agent of the corporation.
Was the Lock Box a “Usual Place of Business”?
As stated previously, Rule 4(c)(6) allows service on a corporation by several methods, including “certified mail at any of its usual places of business.” Until very recently, the courts of Alabama had not addressed the question what constitutes a “usual place of business” for purposes of Rule 4. See Northbrook Indemnity. In *862 Northbrook Indemnity, the supreme court was faced with that very issue. Relying on Paramount Packaging Corp. v. H.B. Fuller Co., 190 F.Supp. 178 (E.D.Pa.1960), the court held that a courier service’s accepting and forwarding mail for North-brook Indemnity Corporation (“North-brook”), the defendant corporation, was not “doing business” and concluded that Northbrook had not been properly served despite acceptance of the process by an employee of the courier service. Northbrook Indemnity, — So.2d at-.
Northbrook had been owned by Allstate Insurance Company (“Allstate”), and Allstate’s home office at 51 West Higgins Road in Barrington, Illinois, was also Northbrook’s home office. Mail addressed to Northbrook at the West Higgins Road address was collected by a courier service at the Barrington post office and delivered to the mail room at Allstate. In August 1996, Allstate sold Northbrook to St. Paul Insurance Company (“St. Paul”); by December 1997, Northbrook had no employees at the West Higgins Road address and had ceased business operations there. The courier service still picked up mail addressed to Northbrook at the West Higgins Road address from the post office. Although Allstate arranged to forward Northbrook’s mail from its mail room to St. Paul’s home office in Minnesota, from which it would be forwarded to the correct regional office, the suit papers never arrived at St. Paul’s regional office in Atlanta, Georgia, the regional office serving Alabama.
The supreme court compared North-brook’s situation to the situation of the defendant company in Paramount Packaging Corp. v. H.B. Fuller Co., 190 F.Supp. 178 (E.D.Pa.1960). The supreme court stated:
“In Paramount ... a federal district court held that the office of a telephone answering service was not a corporation’s usual place of business, even though the corporation had represented that it had an office at the address of the answering service and even though it received mail at that address. 190 F. Supp. at 180-81. The court reasoned that because the defendant had no employees at the answering service’s office and none of the answering service’s employees were authorized to act for the defendant, other than to receive its mail and answer its telephone calls, the corporation was not doing business at that office. Id. at 180.”
Northbrook Indemnity, — So.2d at-.
In many ways, this case is quite similar to Northbrook Indemnity. GM had its dealerships remit payments to a post-office-box number that corresponds to a “lock box” at First Chicago Bank. .Bank employees transferred the remitted payments to an account at the bank. Those employees were authorized only to transfer the payments sent to the “lock box” to the appropriate account. GM did not have any agreements with the bank about what to do with correspondence sent to the “lock box.” In light of our supreme court’s decision in Northbrook Indemnity, we conclude that the “lock box” address to which the summons and complaint were sent was not a usual place of business for GM and that service at the “lock box” did not satisfy the “usual-place-of-business” requirement of Rule 4(c)(6).

Were the Bank or its Employees Agents of GM?

The dealership also argues that the bank or its employees were agents of GM, thus making service at the “lock box” valid as service on an agent of the corporation under Rule 4(c)(6). GM denies that the bank or its employees were its agents at all, but alternatively argues that if they were agents, they were special agents for only the limited purpose of accepting and depositing payments. We agree with GM.
In Horizons 2000, Inc. v. Smith, 620 So.2d 606 (Ala.1993), the supreme court considered the question when a person is deemed to be an agent of a corporation *863 and authorized to receive service of process for the corporation. Horizons 2000 was a corporation made up of European investors. It leased, from Grady Smith and Virginia Smith, property in Bullock County (the “Smith property”) to grow pecans. Horizons 2000, 620 So.2d at 606. The corporation had previously leased other land in Bullock County, also for growing pecans. Id. Gus Tompkins was a local man the corporation employed to do odd jobs on the other land, such as “clean up the groves ... and do some spraying.” Id. The work was characterized by Tompkins as “contract work.” Id. The corporation began using him to do some work on the Smith property. Id. Tompkins also accepted property-tax assessments on the corporation’s Bullock County holdings; he then forwarded these assessments to the corporation. Id. at 606-07.
The Smiths sued Horizons 2000 for a breach of its lease agreement. Id. at 607. The Smiths served Tompkins personally. Id. Horizons 2000 did not respond to the Smiths’ complaint. Id. The trial court entered a default judgment for the Smiths. Id. When Horizons 2000 learned of the default judgment, it moved to have the judgment set aside, arguing that it was void for lack of service. Id. The Smiths argued that service on Tompkins was legally sufficient because he was the agent of Horizons 2000. Id.
The supreme court discussed whether the status of “authorized agent” could be imputed to Tompkins by virtue of his connection to Horizons 2000. Id. The court relied on the reasoning of Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 884 (Ala.1983), in which it had held that a subsidiary corporation could be the authorized agent for service of process for the parent corporation if the plaintiff presented “ ‘proof of a high degree of control’ by the parent corporation over the subsidiary.” Horizons 2000, 620 So.2d at 607 (quoting Volkswagenwerk, 443 So.2d at 884.) In Volkswagenwerk, the court explained that the high degree of control necessary could be demonstrated by evidence indicating that the subsidiary corporation had no true existence of its own and that it was, in essence, merely a department of the parent corporation. Volkswagenwerk, 443 So.2d at 884 (quoting Professional Investors Life Ins. Co. v. Roussel, 445 F.Supp. 687, 698 (D.Kan. 1978)). The Horizons 2000 court concluded that the evidence indicated that Horizons 2000’s control over Tompkins was “slight”' and that Tompkins was not an agent authorized to receive service of process. Horizons 2000, 620 So.2d at 608.
Likewise, the evidence in the present case does not indicate that GM exercised any control over the employees of the bank at which the “lock box” was maintained. As GM argues, the bank and its employees may have been agents for purposes of receiving payments at the “lock box,” but such a limited degree of control does not rise to the level necessary to make them authorized agents for receiving service of process. Therefore, we conclude that the dealership failed to serve an agent of GM, as required by Rule 4(c)(6).

Conclusion

Because the “lock box” was not a usual place of business and because the bank and its employees were not agents authorized to receive service of process for GM, the dealership did not properly serve GM. The default judgment against GM is therefore void. The trial court erred by not setting aside the default judgment pursuant to GM’s Rule 60(b)(4) motion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ„ concur.