70 So.3d 1233 (2011)
Ex parte Tammie Lynn (Moncries) BOYLES.
(In re LVNV Funding, LLC
v.
Tammie Lynn (Moncries) Boyles).
1090222.
Supreme Court of Alabama.
April 8, 2011.
Jerry O. Lorant of Lorant & Associates, PC, Birmingham, for petitioner.
Submitted on petitioner's brief only.
Prior report: Ala.Civ.App., 70 So.3d 1221.
PER CURIAM.
The petition for the writ of certiorari is denied.
In denying the petition for the writ of certiorari, this Court does not wish to be understood as approving all the language, reasons, or statements of law in the Court of Civil Appeals' opinion. Horsley v. Horsley, 291 Ala. 782, 280 So.2d 155 (1973).
WRIT DENIED.
COBB, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.
MURDOCK, J., concurs specially.
MURDOCK, Justice (concurring specially).
The Court denies certiorari review of the decision of the Court of Civil Appeals but explains that, in so doing, it "does not wish to be understood as approving all the language, reasons, or statements of law in the Court of Civil Appeals' opinion. Horsley v. Horsley, 291 Ala. 782, 280 So.2d 155 (1973)." 70 So.3d at 1233. I write separately to explain two reasons for my agreement with this order.

Section 10-12-52(c), Ala.Code 1975
Tammie Lynn (Moncries) Boyles notes in her petition that this Court has never addressed the relationship between § 10-12-52(c), Ala.Code 1975, and the requirement under Rule 4(c)(6), Ala. R. Civ. P., that process be served upon "an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process." She points out that § 10-12-47, Ala.Code 1975, requires a foreign limited liability company to register with the secretary of state before it does business in Alabama and that that registration includes providing "[t]he name and address of an agent for service of process," § 10-12-47(a)(4), and "[a] statement that the foreign limited liability company consents to service of process on it *1234 by registered mail addressed to it at the address [provided by it], if the agent ... cannot be found or served with the exercise of reasonable diligence." § 10-12-47(a)(6) (emphasis added). She further notes that § 10-12-52(c) states:
"A foreign limited liability company, by transacting business in this state without registration, shall be deemed to consent to service of process with respect to causes of action arising out of business transacted in this state by registered mail addressed to the foreign limited liability company at the office required to be maintained in the state or other jurisdiction where it is organized, or, if not so required, at the principal office of the limited liability company."
(Emphasis added.)
Boyles seeks our review of this case based on her argument that the Court of Civil Appeals wrongly concluded, in light of the provisions of § 10-12-52(c), that she was required by Rule 4(c)(6) "to address the process to an officer, a partner, or a managing or general agent of LVNV [Funding, LLC,] or to an agent authorized by appointment or by law to receive service of process on behalf of LVNV." LVNV Funding, LLC v. Boyles, [Ms. 2080442, Oct. 23, 2009] 70 So.3d 1221, 1232 (Ala.Civ.App.2009). There may be merit to this argument.
In § 10-12-52, Ala.Code 1975, the legislature prescribed certain consequences specifically for "foreign limited liability companies" transacting business in Alabama without registering to do business here. Among other things, the legislature provided that a foreign limited liability company that transacts business in this State without registering, and thus without providing Alabama residents with "[t]he name and address of an agent for service of process," "shall be deemed to consent" to service of process "by registered mail," a method of service not even mentioned in Rule 4. § 10-12-52(c). Section 10-12-52(c) further provides that this registered mail simply be "addressed to the foreign limited liability company." These provisions became the law of Alabama by way of an act of our legislature in 1993.
As amended in 2004, Rule 4(c)(6) provides a general rule that process directed to business entities of various types, including limited liability companies, shall be served on certain specified types of individuals. The legislature has not, however, altered the provision in § 10-12-52(c) that an unregistered foreign limited liability company is "deemed to consent" to service by another method. A substantial question exists as to whether the Court of Civil Appeals erred in holding that service as contemplated by § 10-12-52(c) would not be sufficient in this case.
That said, service in accordance with the requirements of § 10-12-52(c) does not appear to have been proven in this case. Section 10-12-52(c) provides that the registered mail required by that section must be addressed to the foreign limited liability company at one of two particular physical locations, i.e., either "the office required to be maintained in the state or other jurisdiction where it is organized, or, if not so required, at the principal office of the limited liability company." The service in question was addressed and delivered to 15 S. Main Street, Suite 700, Greenville, South Carolina 29601. Boyles asserts in her petition to this Court that this is the address of LVNV's "principal office."
In the trial court, however, LVNV submitted an affidavit stating that "LVNV Funding, LLC's address in South Carolina *1235 is 200 Meeting Street, Suite 206, Charleston, SC 29401." Boyles responded by submitting evidence indicating that actions filed on behalf of LVNV in Alabama had listed the aforesaid Greenville, South Carolina, address as LVNV's address. The evidence submitted by neither party in the trial court, however, explicitly addressed what is the "principal office" of LVNV. Indeed, for all that appears, neither party's submission had anything to do with proving the location of LVNV's principal office for purposes of § 10-12-52 but instead was aimed simply at establishing proper service under Rule 4. It is for this reason that I concur in the order of this Court denying certiorari review of this issue.

Service upon "an Agent Authorized by Law"
The Court of Civil Appeals in its opinion further notes, but rejects the applicability in this case of, the principle that service of process may be made upon an agent who is "authorized by law to receive service of process on behalf of" the defendant. 70 So.3d at 1227. I agree that this principle is not applicable to service upon Kathy James as a purported agent of LVNV, but I do not understand the particular principle discussed by the Court of Civil Appeals in the same manner as does that court.
Specifically, the Court of Civil Appeals quotes Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45 (2003), for the principle that "`[t]o establish proper service on a corporation by service on an alleged agent not authorized by appointment of the corporation, a plaintiff must prove that the corporation exercised a "high degree of control" over the alleged agent. 886 So.2d at 51 (quoting Horizons 2000, [Inc. v. Smith,] 620 So.2d [606,] 607 [(Ala. 1993)].)'" 70 So.3d at 1227 (quoting Kingvision, 886 So.2d at 51); see also Horizons 2000, Inc. v. Smith, 620 So.2d 606, 608 (Ala.1993) (noting that a "high degree of control" would require "much more control than would suffice to support an imposition of liability under the doctrine of respondeat superior").
Kingvision and Horizons 2000 both relied upon Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880 (Ala.1983). Volkswagenwerk, however, concerned whether service of process upon a subsidiary corporation was sufficient service as to a parent corporation in a piercing-of-the-corporate-veil analysis. This Court stated the pertinent law as follows:
"The party seeking to prove proper service must at least show that the parent corporation `exercises such control and domination over the subsidiary that it no longer has a will, mind or existence of its own, and operates merely as a department of the parent corporation.' Professional Investors Life Ins. Co., Inc. v. Roussel, 445 F.Supp. 687, 698 (D.Kan. 1978). Alternatively, the party seeking to have service on the subsidiary and the parent may show that
"`[T]he parent corporation has complete control over the subsidiary, conducting its business and creating its policies ... (or the subsidiary) is a mere adjunct and instrumentality of the parent ... (or the) subsidiary corporation is merely a "dummy" by means of which the parent corporation does business in the state....'
"Fletcher's Cyclopedia of the Law of Private Corporations, § 8773 at 527-528, cited in, Stoehr v. American Honda Motor Co., Inc., 429 F.Supp. 763, 766 (D.Neb.1977)."
Volkswagenwerk, 443 So.2d at 884 (emphasis added). We concluded that the "[r]espondent *1236 ha[d] submitted overwhelming evidence of the high degree of control had by [the parent corporation] over the internal affairs of [the subsidiary corporation]" and that service upon the subsidiary corporation as the "agent in fact" of the parent corporation was sufficient. 443 So.2d at 885. This analysis obviously is inapposite where the proposed agent is an individual.
In Horizons 2000, upon which Kingvision also relied, this Court discussed, but actually stopped short of deciding, the applicability of the "rule of Volkswagenwerk" to a situation involving physical delivery of service to an individual. The Court noted that it was
"fairly debatable whether Tompkins was `controlled' in a respondeat superior sense, as the Smiths say he was, or whether he was an independent contractor for Horizons, as Horizons says he was. However, Volkswagenwerk indicates that the plaintiff must show that the defendant exercised a `high degree of control' over the alleged agent in order for the court to imply the authority to be an agent for service of process; certainly, Volkswagenwerk would require much more control than would suffice to support an imposition of liability under the doctrine of respondeat superior. Although there may be some evidence of slight `control' in this case, the plaintiffs presented no evidence that Horizons had the `high degree of control' over Tompkins necessary to support a finding that he had authority to accept service of process for Horizons."
Horizons 2000, 620 So.2d at 607-08. In discussing the Volkswagenwerk rule, however, this Court noted:
"[W]e assume, arguendo, that the law would in this context impute `authorized agent' status. Horizons very briefly alludes to this issue in a footnote to its argument on appeal. Given the lack of discussion or analysis of this question by the parties, we do not address it here."
620 So.2d at 607 n. 1.
I caution against continuing down the road of attempting to apply Volkswagenwerk's piercing-of-the-corporate-veil analysis to cases where it is inapposite, i.e., where the proposed agent is a natural person rather than another corporation.