Keith Martin and Keith Martin Construction Company, Inc., (hereinafter collectively referred to as "Martin") appeal from the denial of their motion to set aside a default judgment ordering them to pay Jeff P. Crumpton and Ashley Crumpton damages totaling $33,000.
On March 15, 2002, the Crumptons sued Martin seeking damages for an alleged breach of a contract. The trial court entered an order dated October 1, 2002, stating that the parties had 30 days to act on the case before it would be dismissed. On November 1, 2002, the Crumptons filed a motion for a default judgment, alleging that Martin had failed to answer or otherwise file pleadings in the case. On November 5, 2002, the trial court clerk entered a default against Martin. On December 17, 2002, the trial court held a hearing to elicit testimony regarding damages. Martin failed to appear at that hearing, and on January 3, 2003, the trial court entered a default judgment against Martin in the amount of $33,000.
On January 22, 2003, Martin filed a motion, pursuant to Rule 55, Ala. R. Civ. P., seeking to set aside the January 3, 2003, default judgment. The trial court held a hearing and denied the motion. Martin timely appealed.
The record reveals the following. Martin entered into a contract with the Crumptons for the construction of a house. Martin Construction Company completed construction of the Crumptons' house, and the parties executed a contract regarding the sale of the house on October 20, 2000. In October 2000, Jeff Crumpton submitted a "punch list" of items regarding the Crumptons' house that he requested be repaired or corrected. In an April 11, 2003, affidavit submitted in support of the Rule 55 motion, Keith Martin stated that in the weeks following his receipt of the punch list from Jeff Crumpton, he was informed by subcontractors that the items on the punch list had been corrected.
Martin also stated in his affidavit that the Crumptons had informed him in 2001 that some items from the punch list had not been corrected. Martin wrote Jeff Crumpton a letter on January 3, 2002, in which he indicated his willingness to "make things right." Shortly thereafter, attorney Vonda Felton notified Martin that she was representing the Crumptons. On January 18, 2002, Martin consented to completing the items on the punch list promptly. Thereafter, Martin agreed that the Crumptons' home warranty would be extended for an additional 60 days.
On March 15, 2002, the Crumptons filed an action against Martin. Martin testified in his affidavit that upon receiving notice of the action, he communicated with Felton regarding the lawsuit and the requested *Page 702 
repairs. On April 15, 2002, Martin wrote Felton a letter in which he contended that most of the requested work had been done, and he asked Felton to let him know if there was anything else that he needed to do.
On April 26, 2002, Felton wrote Martin and acknowledged that many of the punch list items had been completed. Felton advised Martin that she would be able to "dismiss [the] matter" if the remaining repairs were made. Felton also told Martin that if it became necessary for Martin to file an answer, she would let him know. Felton stated in the letter that she might file for a default judgment if the court notified her that the case might be dismissed for want of prosecution. Felton wrote, "we will have a few days to get together with the Court to make sure that your rights are protected and that the case is not dismissed." Martin never filed an answer to the lawsuit. In his April 11, 2003, affidavit, Martin stated that he believed the repairs were being completed and that there was no need to file an answer.
On May 17, 2002, Felton wrote Martin and stated that a few items on the punch list had yet to be completed. Felton stated that because she had not received any notice from the trial court that she needed to take action, she would "continue to let things ride for [Martin] to be able to complete the projects." In the May 17, 2002, letter, Felton stated that "if I do receive notice from the clerk's office or the judge that I must file a default, due to the fact that you have not filed an answer, I will notify you in writing before I have to do that." In his April 11, 2003, affidavit, Martin testified that he understood from that May 17, 2002, communication from Felton that he "could no longer" file an answer in the lawsuit; Martin did not explain the basis for that belief. Martin also stated that he thought the lawsuit would soon be dismissed because "nearly all the requested repairs had been completed."
On August 29, 2002, Martin received a letter from Felton stating that there still remained items to be completed at the Crumptons' home. In addition, Felton notified Martin that she was going to file for a default judgment "on or about" September 30, 2002, if he or Martin Construction Company had not completed the remaining items on the punch list by then. Martin testified in his affidavit that he contacted Jeff Crumpton to determine what items were still incomplete and that as of September 26, 2002, Jeff Crumpton had informed him of only three items that were incomplete: 1) the bottom of the vanity cabinet in an upstairs bathroom, 2) a leak in the retaining wall where it met the garage at the basement, and 3) water drainage at the end of the driveway. Martin testified in his affidavit that he spoke with Jeff Crumpton and that Crumpton agreed to delay the repair of the vanity cabinet bottom and that the vanity was repaired in late December 2002 or early January 2003. Martin also testified in his affidavit that the driveway was repaired by October 9, 2002, and that the repair to the retaining wall was completed on December 9, 2002.
On November 1, 2002, the Crumptons moved for a default judgment. On the same day, Felton wrote Martin to advise him that she had received notice from the trial court that, unless she moved for a default judgment, the case would be dismissed and that therefore she had "filed an application for entry of default." In that letter, Felton stated that if the outstanding items were completed before a final damages hearing on the default, she would be happy to request that the court set aside the default judgment. *Page 703 
On December 17, 2002, the trial court held a hearing to receive testimony regarding damages. The trial court's case action summary indicates that the hearing was set for December 17, 2002, and that notices were mailed to all parties. Martin testified in his affidavit that he did not receive notice of the December 17, 2002, hearing. Martin does not contend on appeal that he did not receive the motion for a default judgment or that he did not receive the letter notifying him that the motion for a default judgment had been filed.
At the December 17, 2002, hearing, Jeff Crumpton testified that while most of the items on the punch list were completed, "it looks like it is possible" that the front steps are beginning to separate from the house. Jeff Crumpton also testified regarding "some flooding problems" in the basement. Jeff Crumpton testified that repairing the steps would cost $3,000 and that repairing the flooding problem "could be upwards of $25,000 or $30,000, depending on what actually has to be done." In his affidavit, Martin testified that the approximate cost to replace the steps and to repair the leak in the retaining wall, which he contends caused the flooding, would be no more than $1,500.
On appeal, Martin contends that the trial court should have granted his Rule 55, Ala. R. Civ. P., motion and set aside the default judgment; he contends that the trial court should decide the case on its merits. "The applicable standard of review in appeals stemming from a trial court's granting or denying a motion to set aside a default judgment is whether the trial court's decision constituted an abuse of discretion." Kirtlandv. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600, 603 (Ala. 1988). Our courts have construed Rule 55(c) as contemplating a liberal exercise of a trial court's discretion in favor of setting aside default judgments. Ex parte Illinois Cent. GulfR.R., 514 So.2d 1283 (Ala. 1987). Our supreme court has held that the trial court's use of discretionary authority should be resolved in favor of the defaulting party where there is doubt as to the propriety of the default judgment. Johnson v. Moore,514 So.2d 1343 (Ala. 1987). Our supreme court has also established guidelines to assist a trial judge in exercising his discretion.
 "[A] trial court's broad discretionary authority under Rule 55(c) should not be exercised without considering the following three factors: 1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct."
Kirtland, 524 So.2d at 605.
The Crumptons do not dispute that Martin has meritorious defenses or that the Crumptons' would not be unduly prejudiced by setting aside the default judgment. Rather, they argue on appeal that the trial court properly denied Martin's motion to set aside the default judgment because the default judgment was entered due to Martin's own culpable conduct. Martin asserts that he relied on Felton's statements that, he contends, implied that there was no need for him to answer the Crumptons' complaint because Felton would protect his rights and inform him if he needed to answer. He then later believed that he could not answer due to Felton's May 17, 2002, letter stating that she may have to file default "due to the fact that [Martin] ha[d] not filed an answer." Martin asserts that he believed the lawsuit would be dismissed because nearly all of the requested repairs had been completed by the time the default judgment was entered. Therefore, Martin states *Page 704 
that his conduct in failing to respond to the action was not culpable. The Crumptons contend that Felton never undertook to protect Martin's rights and that Martin's failure to file an answer amounted to culpable conduct.
Our courts have said that "[c]onduct committed willfully or in bad faith constitutes culpable conduct for purposes of determining whether a default judgment should be set aside."Leventhal v. Harrelson, 723 So.2d 566, 570 (Ala. 1998). Such conduct is "`characterized by incessant and flagrant disrespect for court rules, deliberate and knowing disregard for judicial authority, or intentional nonresponsiveness.'" Sawyer v.Perkins, 717 So.2d 432 (Ala.Civ.App. 1998) (quoting Kirtland, 524 So.2d at 608)). Negligence by itself is insufficient to establish culpable conduct warranting denial of a motion to set aside default judgment. Sawyer, 717 So.2d at 434. A defaulting party's "reasonable explanation for inaction and non-compliance may preclude a finding of culpability." Kirtland, 524 So.2d at 608.
In his affidavit, Martin states that he did not believe that he needed to file an answer to the Crumptons' complaint because in an April 26, 2002, letter, Felton stated "the Court has not given me [any] indication that I need to file for [a] default or that an answer needs to be filed." Felton continued, "I will then let both you and Mr. Crumpton know that either an answer will need to be filed on your behalf or I will need to file for [a] default." In the April 26, 2002, letter Felton also stated that if an answer needed to be filed on Martin's behalf, "we will have a few days to get together with the court to make sure that your rights are protected and that the case is not dismissed." Martin testified in his affidavit that he began completing the projects on the punch list and that he believed Felton would let him know if he needed to file an answer. Martin also testified in his affidavit that he kept in contact with the Crumptons and Felton regarding the progress of the work at the Crumptons' home.
On May 17, 2002, Felton wrote Martin a letter stating that while "many of the projects had been completed," there were a "few outstanding items remaining." In her letter, Felton stated that she would prepare a statement of dismissal if the projects were completed before she received notice from the trial court clerk's office that she must file for a default. In her May 17, 2002, letter, Felton wrote, "If I do receive notice from the Clerk's Office or the Judge that I must file a default, due to the fact that you have not filed an answer, I will notify you in writing before I am forced to do that." Martin testified in his affidavit that after receiving the May 17, 2002, letter from Felton, he believed he could no longer file an answer in the matter. Martin stated that he also believed that the case would "soon be dismissed because nearly all the requested repairs had been completed."
On August 29, 2002, Felton wrote Martin a letter and stated that there were still outstanding items to be completed at the Crumptons' house and that she was going to file for a default by September 30, 2002, if the requested work was not completed by then. Martin testified that he contacted Jeff Crumpton and that Crumpton informed him of three items that needed to be addressed: 1) the bottom of a vanity cabinet in an upstairs bathroom, 2) a leak in the retaining wall where it meets the garage at the basement, and 3) water drainage from the driveway.
Martin testified in his affidavit that he took a plumbing subcontractor with him to meet Jeff Crumpton twice to look at the upstairs vanity cabinet. He testified that Crumpton agreed to delay the repair until *Page 705 
the subcontractor worked at a home requiring similar material to the material used in the Crumpton home in an effort to cut costs. Martin testified in his affidavit that the vanity cabinet was replaced in late December 2002 or early January 2003.
In a September 26, 2002, letter to Felton, Martin explained that the retaining wall could not be repaired until there was dry weather. Martin testified in his affidavit that the retaining wall had been repaired on December 9, 2002. Martin attached an invoice to his motion to set aside the default judgment showing that he was billed $450 for the repairs to the retaining wall made on December 9, 2002. Martin further testified in his affidavit that after the retaining wall was repaired he had two telephone conversations with Jeff Crumpton in which Crumpton stated that the repair work had solved the problem with the retaining wall.
Martin testified in his affidavit that the driveway drainage had been repaired by October 9, 2002, and Martin submitted an invoice for that work with his motion to set aside the default judgment. Martin stated in his affidavit that he did not receive any indication that the repair was ineffective.
On November 1, 2002, the Crumptons filed a motion for a default judgment. That same day, Felton wrote Martin and stated that "Jeff [Crumpton] says there are still items that need to be completed. If these items are completed before the court sets this matter for a final hearing on the default, I would be happy to set aside the default." The court set a hearing on the motion for a default judgment for December 17, 2002. Martin testified in his April 11, 2003, affidavit that of the three items Crumpton complained of, two of them were completed by the December 17, 2002, default hearing, and the last one, the vanity cabinet, was completed shortly thereafter with the approval of Jeff Crumpton.
At the default hearing, Jeff Crumpton testified that "it looks like it is possible" that the front steps were beginning to separate from the house. Martin testified in his affidavit that the front steps were repaired in April 2001 and that, because Jeff Crumpton believed a hairline fracture meant that the steps were separating, Martin had the steps completely rebuilt again in September 2002. Martin stated in his April 11, 2003, affidavit that "Mr. Crumpton has not informed me that the steps have re-separated or that there are any other problems with the steps."[1]
Jeff Crumpton also testified at the December 17, 2002, default hearing that there were "flooding problems" in the basement due to the leak in the retaining wall. Martin testified in his affidavit that he repaired the retaining wall on December 9, 2002, and that Jeff Crumpton had twice stated that the repair work had solved the problem.
Martin also testified in his affidavit that he did not receive notice from the court or Felton that a hearing was scheduled for December 17, 2002. The trial court's case action summary sheet indicates that notices were mailed to all parties.
A trial court must balance two competing interests associated with the entry of a default judgment — "judicial economy and the defendant's right to defend on the merits." Sampson v. Cansler,726 So.2d 632, 633 (Ala. 1998). Our supreme court has held that a trial court must presume that cases should be decided on *Page 706 
the merits whenever practicable to do so. Sampson, 726 So.2d at 633. "The Alabama Constitution and our past opinions construing the default judgment rule support the conclusion that the interest in preserving a litigant's right to a trial on the merits is paramount and, therefore, outweighs the interest of promoting judicial economy." Kirtland, 524 So.2d at 604.
In this case, Martin took steps to ensure that the items on the Crumptons' punch list were repaired. When he became aware of three remaining items, Martin repaired two of them before the December 17, 2002, hearing, and Martin contends that Jeff Crumpton agreed to allow him to repair the third item in late December or early January. It is unclear from the record whether Felton or the Crumptons ever alerted Martin to the possible separation of the front steps or to the leak in the retaining wall after Martin repaired it on December 9, 2002. Felton specifically stated that she would "be happy to set aside the default [judgment]" if Martin completed the repairs to the items listed on the punch list.
The Crumptons were awarded $33,000 based on Jeff Crumpton's testimony at the default hearing. Jeff Crumpton did not testify that any contractors or other repair workers had provided an estimate as to the costs of the repairs. Martin testified in his affidavit that both the steps and the retaining wall could be repaired for less than $1,500.
Our supreme court has stated that "[r]easonable explanations for defaults, such as attorney neglect and liability insurance company neglect attributable to innocent inadvertence, militate in favor of a finding of an absence of culpability and provide a basis for setting aside a default judgment." Sanders v. Weaver,583 So.2d 1326 (Ala. 1991) (citations omitted) (holding that attorney's failure to timely respond to summons and complaint due to his absence from the office for personal problems was negligent, not culpable, conduct for purposes of setting aside default judgment).
Given the facts of this case, we conclude that Martin presented to the trial court a "reasonable explanation for [his] inaction" in failing to answer the Crumptons' complaint or to appear at the default hearing. Kirtland, 524 So.2d at 608. The record on appeal indicates that Martin has a meritorious defense to the Crumptons' claims, and the Crumptons have not presented evidence that they would be unduly prejudiced by a trial on the merits. We reverse the trial court's judgment denying Martin's Rule 55(c) motion, and we remand the cause for the trial court to set aside the default judgment and for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.
[1] The record on appeal does not indicate whether the steps were listed on the punch list.