BOLIN, Justice.
 

 John Trotman Carroll appeals from a default judgment entered in favor of Alton D. Williams on Williams’s cross-claim against Carroll. We affirm.
 

 Facts
 
 and Procedural History
 

 On April 12, 2004, Southern Sports, Inc., which operated a retail sporting-goods store, executed a promissory note for
 
 *465
 
 $141,761.56 in favor of The Commercial Bank of Ozark (“Commercial Bank”), which was secured by a mortgage in favor of Commercial Bank on the store premises. Additionally, Southern Sports’ shareholders, Carroll and Williams, executed individual personal guarantee agreements guaranteeing Southern Sports’ obligation on the indebtedness owed Commercial Bank.
 

 On August 5, 2005, Commercial Bank sued Southern Sports and Carroll and Williams, as individual guarantors, to recover the deficient balance of $103,730.68 on the promissory note plus interest and a reasonable attorney fee. Southern Sports, Carroll, and Williams were served with the complaint on August 8, 2005.
 

 On September 16, 2005, Commercial Bank filed with the trial court an “Application, Affidavit, and Entry of Default and Default Judgment” seeking a default judgment against Carroll. On October 3, 2005, the trial court entered a default judgment in favor of Commercial Bank and against Carroll in the amount of $120,444.05.
 
 [1]
 

 On December 16, 2005, Williams cross-claimed against Carroll alleging breach of contract, breach of a fiduciary relationship, and conversion. Carroll was served with a copy of the cross-claim complaint on January 11, 2006. Carroll failed to answer the cross-claim or otherwise to defend against the cross-claim.
 

 On September 13, 2006, Williams moved the trial court for a default judgment pursuant to Rule 55, Ala. R. Civ. P. Williams supported his motion for a default judgment with his deposition and other documents, which indicated the following: Williams and Carroll were shareholders in Southern Sports, a corporation that operated a retail sporting-goods store. Williams became a shareholder in August 1995, after purchasing for $20,000 49 shares of Southern Sports’ 99 authorized shares. Williams served as Southern Sports’ secretary; he wrote checks, made bank deposits, and completed tax forms, including employee income-withholding and FICA forms. Williams was required to execute a personal guarantee on the $141,761.56 promissory note with Commercial Bank, which was also secured by a mortgage on Southern Sports’ property and its inventory. Additionally, store vendors required Williams to execute personal guarantees on purchases of store inventory. Carroll assured Williams that the personal guarantees would never be an issue because he would satisfy those obligations from Southern Sports’ earnings and that “in the worst case ... [Carroll] would pay it if it ever came to that.” Williams subsequently discovered that Carroll was taking money from Southern Sports. Carroll would take money from the cash register at the Southern Sports’ store and write himself checks from Southern Sports’ bank account. He would also pay personal debts and expenses out of Southern Sports’ bank account. On one occasion Carroll borrowed $10,000 from Peoples Bank, supposedly to apply against Southern Sports’ debts; however, Carroll kept the money for himself and then repaid the loan from Southern Sports’ funds. When Williams confronted him, Carroll responded by saying, “[W]hat [are you] going to do about it?”
 

 Williams stated that Carroll refused to pay vendors, that he discarded bills in the
 
 *466
 
 garbage, and that he refused to pay the state and federal income-withholding and FICA taxes. In October 2003, Carroll denied Williams access to Southern Sports’ bank accounts and prevented him from signing checks and paying bills. Williams states that, in addition to being sued by Commercial Bank, he was sued on his personal guarantee by several vendors, and he remains liable for a substantial tax debt and penalty.
 

 On September 25, 2006, the trial court entered a default judgment in favor Williams. The trial court awarded Williams $114,110 on the breach-of-contract claim; $89,635- on the breach-of-fiduciary-relationship and conversion claims; and $100,000 in punitive damages.
 

 On October 24, 2006, Carroll moved the trial court to set aside the default judgment, stating as grounds:
 

 “1. That [Carroll’s] default is excused by reason of fact that he was unrepresented by an attorney at the time the suit was initially filed or when the Cross-Claim was filed by [Williams];
 

 “2. That [Carroll] did not realize that he had to respond to the Cross-Claim;
 

 “3. That [Carroll] thought that the case was over with when he paid his share of the note to Commercial Bank on or about May 17, 2006, as evidenced by the judgment release attached hereto and marked Exhibit A.
 

 “4. That [Carroll] was under the misunderstanding that the payment to The Commercial Bank resolved all issues in the above styled cause.
 

 “5. That [Carroll] has a meritorious defense against Count 1 in that he did not breach a contract with [Williams]. Further, [Carroll] is not guilty of breach of any contract with [Williams],
 

 “6. [Carroll] has a meritorious defense against Count 2 in that he did not breach a fiduciary relationship to [Williams]. Further, that the award of . punitive damages are based upon evidence that is inadmissable and not true.
 

 “7. [Carroll] has a meritorious defense against Count 3 in that he did not convert Two hundred thousand ($200,000) Dollars of [Williams’s] money to his own use.
 

 “8. [Carroll] represents into this Court that he can provide evidence to disprove statements made in the affidavits supporting said default judgment and the ultimate award of damages as set out in the default judgment entered by this court on September 25, 2006.”
 

 The only evidence presented by Carroll in support of the motion was a “judgment release” indicating that Carroll’s original obligation to Commercial Bank had been satisfied.
 

 Carroll’s motion to set aside the default judgment was originally set for a hearing on December 18, 2006. Subsequently, the hearing on Carroll’s motion to set aside the default judgment was continued on several occasions by motion of both parties. The motion to set aside was denied by operation of law on January 22, 2007. See Rule 59.1, Ala. R. Civ. P. Carroll filed this appeal on March 2, 2007.
 
 [2]
 

 Standard of Review
 

 This Court has stated:
 

 “A trial court has broad discretion in deciding whether to grant or deny a motion to set aside a default judgment.
 
 *467
 

 Kirtland v. Fort Morgan Auth. Sewer Serv., Inc.,
 
 524 So.2d 600 (Ala.1988). In reviewing an appeal from a trial court’s order refusing to set aside a default judgment, this Court must determine whether in refusing to set aside the default judgment the trial court exceeded its discretion. 524 So.2d at 604. That discretion, although broad, requires the trial court to balance two competing policy interests associated with default judgments: the need to promote judicial economy and a litigant’s right to defend an action on the merits. 524 So.2d at 604. These interests must be balanced under the two-step process established in
 
 Kirtland.
 

 “We begin the balancing process with the presumption that cases should be decided on the merits whenever it is practicable to do so. 524 So.2d at 604. The trial court must then apply a three-factor analysis first established in
 
 Ex parte Illinois Central Gulf R.R.,
 
 514 So.2d 1283 (Ala.1987), in deciding whether to deny a motion to set aside a default judgment.
 
 Kirtland,
 
 524 So.2d at 605. The broad discretionary authority given to the trial court in making that decision should not be exercised without considering the following factors: ‘1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant’s own culpable conduct.’ 524 So.2d at 605.”
 

 Zeller v. Bailey,
 
 950 So.2d 1149, 1152-53 (Ala.2006).
 

 Discussion
 

 Carroll argues on appeal that because his motion to set aside the default judgment was denied by operation of law, the trial court did not apply the analysis set forth above from
 
 Kirtland v. Fort Morgan Authority Sewer Service, Inc.,
 
 524 So.2d 600 (Ala.1988). Therefore, he contends, the default judgment entered in favor of Williams must be reversed and the case remanded so that the trial court can conduct an evidentiary hearing and apply the
 
 Kirtland
 
 analysis.
 

 The law is well settled in Alabama that the defaulting party has the initial burden of demonstrating the existence of the three
 
 Kirtland
 
 factors.
 
 Ex parte Family Dollar Stores of Alabama, Inc.,
 
 906 So.2d 892, 899-900 (Ala.2005);
 
 Phillips v. Randolph,
 
 828 So.2d 269, 278 (Ala.2002); and
 
 Kirtland,
 
 524 So.2d at 605-08. The only
 
 Kirtland
 
 factor addressed by Carroll in his motion to set aside the default judgment was the meritorious-defense factor. Carroll’s claims— that he was not represented by counsel; that he was unaware that a response to the cross-claim was required; that he thought the case was over; and that he was under a misunderstanding — are completely irrelevant to the
 
 Kirtland
 
 analysis. With regard to a meritorious defense in the context of a
 
 Kirtland
 
 analysis, this Court has stated:
 

 “[A] defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside the default judgment
 
 and its supporting affidavits,
 
 if proven at trial, would constitute a complete defense to the action, or when
 
 sufficient evidence has been adduced either by way of affidavit or by some other means
 
 to warrant submission of the case to the jury....
 

 “The allegations set forth in the answer and in the motion must be
 
 more than mere bare legal conclusions without factual support;
 
 they must counter the cause of action averred in the complaint with specificity — namely, by set
 
 *468
 
 ting forth relevant legal grounds substantiated by a credible factual basis. Such allegations would constitute a ‘plausible defense.’ ”
 

 Kirtland,
 
 524 So.2d at 606 (emphasis added).
 

 Carroll has failed to argue, or even to allege, that Williams would not be unfairly prejudiced if the default judgment is set aside and that the default judgment was not a result of Carroll’s own culpable conduct. Carroll’s assertion that he has a meritorious defense to Williams’s claim is nothing more than a bare legal conclusion unsupported by affidavit or other evidence. The sole piece of evidence presented by Carroll in support of his motion was the “judgment release” indicating that he had satisfied his original obligation to Commercial Bank. However, that document has no significance whatsoever to the claims asserted by Williams against Carroll. Accordingly, we conclude that Carroll has failed to meet his initial burden under the
 
 Kirtland
 
 analysis. Because Carroll has failed to satisfy his initial burden under the
 
 Kirtland
 
 analysis, we will not hold the trial court in error for allowing Carroll’s motion to set aside the default judgment to be denied by operation of law without having applied the
 
 Kirtland
 
 analysis. See
 
 Rudolph v. Philyaw,
 
 909 So.2d 200 (Ala.Civ.App.2005).
 

 Conclusion
 

 The default judgment in favor of Williams is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, WOODALL, and STUART, JJ., concur.
 

 [1]
 

 . It appears from the record that Commercial Bank offered to release Williams from any further obligation under the guarantee agreement upon payment of one-half of the judgment. Williams executed a promissory note for $50,000 in favor of Commercial Bank on December 14, 2005. It appears that Carroll satisfied the balance of the judgment in May 2006.
 

 [2]
 

 . On February 22, 2007, the parties purported to file, pursuant to Rule 59.1, Ala. R. Civ. P., a joint motion to extend the time to rule on Carroll’s motion to set aside the default judgment. However, the extension of the 90-day period provided for in Rule 59.1 ‘‘must be of record before the 90-day period expires, because any purported extension after the 90 days is a nullity.”
 
 Ex parte Caterpillar, Inc.,
 
 708 So.2d 142, 143 (Ala.1997).