*755
On Second Application for Rehearing

THOMAS, Judge.
The opinion of May 10, 2013, is withdrawn, and the following is substituted therefor.
Curtis Austin (“the father”) and Cornelia Austin (“the mother”) were divorced in July 2004. The judgment of divorce incorporated an agreement of the parties, and, among other things, the agreement awarded the parties joint legal custody of the parties’ children, awarded the mother primary physical custody of the children, ordered the father to pay child support in the amount of $400 per month, and ordered the father to be responsible for half of the noncovered medical expenses incurred by the children. In December 2011, the mother, who was a that time acting pro se, filed a form petition seeking modification of the father’s child-support obligation. The petition did not indicate that the father had not paid child support as previously ordered. According to the signed return of service contained in the record on appeal, the father was served with the mother’s petition on April 5, 2012.
On April 26, 2012, the mother moved to have the matter set for a trial. In response, the trial court entered a scheduling order on May 11, 2012, that set the action for a trial to be held on June 21, 2012. Notice of the entry of the scheduling order was sent to the mother. However, the record does not indicate that notice was sent to the father, who had yet to answer the mother’s petition.
On May 22, 2012, the mother, who had employed an attorney, filed an amended petition again seeking modification of the father’s child-support obligation and alleging in addition that the father had not paid his child-support obligation after June 2011 and that the father had not paid his half of the noncovered medical expenses incurred by the children. Like the original petition, the amended petition sought an increase in the father’s child-support obligation; however, the amended petition further sought past-due child support and interest, past-due noncovered medical expenses that had been incurred by the children, and an attorney fee. The amended petition did not specifically mention the word contempt, but the allegations contained in the amended petition stated a claim for contempt against the father. See Rule 8(f), Ala. R. Civ. P. (stating that pleadings “shall be so construed as to do substantial justice”); Waters v. Jolly, 582 So.2d 1048, 1056 (Ala.1991) (explaining that, under Rule 8(f), “[a]ll that is required is that the complaint adequately notify the [defendant] of the plaintiffs’ claims”). Although the mother’s amended petition was filed less than 42 days before the trial setting, the mother did not seek leave of court, as she was required to do by Rule 15(a), Ala. R. Civ. P. (indicating that a party must seek leave of court to amend a pleading if the amendment comes less than 42 days before the first trial setting).
The trial was held as scheduled on June 21, 2012; however, the father, who had never answered the mother’s petition or amended petition, did not appear. The trial court entered a default judgment on June 29, 2012, finding the father to be in contempt, calculating the arrearages of child support and medical expenses owed by the father, increasing the father’s child-support obligation to $1,115 per month, awarding the mother a costs judgment of $267[1] and awarding the mother’s attorney *756 a $1,500 attorney fee. In that judgment, the trial court noted that the father could purge himself of contempt by paying $7,900, plus interest. On the same date, the trial court entered an order of attachment ordering that the father be placed in the Jefferson County jail until further order of the trial court.
On July 15, 2012, the father, who had been incarcerated as a result of the order of attachment, filed a motion pursuant to Rule 55(c), Ala. R. Civ. P., seeking vacation of the trial court’s June 29, 2012, judgment and attachment order.[2] In the same motion, the father sought immediate release from incarceration.[3] The father amended his postjudgment motion on July 16, 2012, and again on August 1, 2012. With his third amended postjudgment motion, the father presented his own affidavit and the affidavit of his employer, Billy Gaines, the owner of a barber salon; the father’s affidavit stated that he had been terminated from his employment with Alabama Power Company in June 2011, and both affidavits stated that the father’s income was $700 per month. The trial court did not hold a hearing on the father’s motion, and it was deemed denied by operation of law on October 15, 2012.[4] The father filed a notice of appeal on October 22, 2012.
On appeal, the father makes several arguments. He first argues that the trial court erred in not “granting him a new trial” because, he says, he was never served with the scheduling order. He next argues that the trial court lacked subject-matter jurisdiction because the mother paid only one filing fee and be *757 cause, he contends, a contempt petition and a modification petition cannot be included in the same pleading. The father then argues that the trial court improperly allowed the amended modification and contempt petition to be tried despite the fact that the mother’s modification petition was amended without leave of court, which leave was required by Rule 15(a). Further, the father argues that the evidence submitted in support of his postjudgment motion established that he was unable to pay his child-support obligation and, thus, that he could not be held in contempt. Finally, the father argues that he was not properly served with the mother’s amended petition; he contends that, because he was a party in default for failure to appear and because the mother’s amended petition asserted a new claim against him, the mother was required by Rule 5(a), Ala. R. Civ. P., to serve the amended petition on him pursuant to Rule 4, Ala. R. Civ. P., by either personal service or certified mail.
We first consider the father’s argument that the trial court lacked subject-matter jurisdiction because the mother’s amended petition coupled a modification action with a contempt action. The father, relying on Opinion of the Clerk No. 21, 375 So.2d 1066 (Ala.1979), argues that the mother failed to properly institute her contempt action because she did not file her contempt action separately or pay a separate filing fee. Although it appears that the opinion the father relies upon supports his contention, as does Opinion of the Clerk No. 25, 381 So.2d 58, 59 (Ala.1980) (“The basic differences between contempt proceedings and proceedings to modify a final decree preclude the inclusion of a petition for rule nisi and a petition to modify in the same pleading.”), we note that both opinions predate the adoption of Rule 70A, Ala. R. Civ. P., which now governs contempt proceedings arising out of civil actions. See Ex parte Boykin, 656 So.2d 821, 827 n. 5 (Ala.Civ.App.1994) (recognizing that, as of July 11, 1994, contempt proceedings arising from civil actions are no longer governed by Rule 33.3, Ala. R.Crim. P., and instead are governed by Rule 70A).
Rule 70A expressly provides that contempt proceedings arising out of civil actions are instituted by the filing of a petition and that such a contempt proceeding is governed by the Alabama Rules of Civil Procedure. Rule 18, Ala. R. Civ. P., provides that a party may assert as many claims as he or she has against an individual in the same action. Thus, based on the application of Rule 70A and Rule 18, we cannot agree with the father that the mother was not permitted to join her modification claim and her contempt claim in the same action.
However, we agree with the father that the mother’s amended petition, which added her contempt claim, was not a proper amendment under Rule 15(a). That rule reads, in part:
“Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause.”
The mother’s amended petition was filed less than 42 days before the trial setting; thus, she was required to seek leave of court to amend her petition.
A party who fails to seek leave to amend a pleading under Rule 15(a) may *758 suffer severe consequences. Our supreme court has adopted the United States Court of Appeals for the Eleventh Circuit’s view on “the legal effect of an attempt to amend a complaint without obtaining leave of court” under Rule 15(a).[5] Image Marketing, Inc. v. Florence Television, L.L.C., 884 So.2d 822, 825-26 (Ala.2003). According to our supreme court,
“ ‘[i]n general, if an amendment that cannot be made as of right is served without obtaining the court’s leave or the opposing party’s consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court’s approval.’ ”
Image Marketing, 884 So.2d at 826 (quoting Hoover v. Blue Cross & Blue Shield of Alabama, 855 F.2d 1538, 1544 (11th Cir.1988)).
However, our supreme court noted that the Hoover court had indicated that “ ‘an untimely amended pleading served without judicial permissiofiolated Rule 15(a), we cannot agree that the mother’s failure to seek leave to amend her petition renders her pleading a nullity under the facts of this case. The mother’s failure to seek leave to amend her petition, therefore, does not benefit the father.
The father’s argument that the mother’s amended petition was not properly served upon him, however, does prove successful for the father. As the father pointed out in his postjudgment motion and explains on appeal, Rule 5(a), Ala. R. Civ. P., despite stating that service need not be made on parties in default for failure to appear, requires that “pleadings asserting new or additional claims for relief against [parties in default for failure to appear] shall be served upon them in the manner provided for service of summons in Rule 4, [Ala. R. Civ. P.].” See Elliott v. Burch, 293 Ala. 244, 246, 301 So.2d 557, 559 (1974) (“As we understand the portion of the Rule quoted above, it applies to a plaintiff who amends his complaint and asserts new or additional claims against one who fails to appear....”); see also Rule 5(a)(2), Fed.R.Civ.P., and Vames v. Local 91, Glass Bottle Blowers Ass’n of United States and Canada, 674 F.2d 1365, 1368 (11th Cir.1982) (“Rule 4, [Fed.R.Civ. P.,] and Rule 5(a)[, Fed.R.Civ.P.,] as it applies to parties in default for failure to appear, reflect a policy that a defendant should receive notice of all claims for relief upon which a court may enter judgment against him. Formal personal service impresses upon a defendant that judicial process has been invoked to effect a coercive remedy against him. Whether the notice be that an action has commenced or that the moving party has added a new or additional claim for relief against a party in default for failure to appear, the need for notice is the same.”). We note that the federal courts, in construing the analogous *759 federal rule, have concluded that a party is “in default for failure to appear” when that party does not appear in an action; no formal adjudication of default by a court is necessary. Vames, 674 F.2d at 1368 n. 3. Thus, the father, because he did not answer the mother’s petition, was a party “in default for failure to appear,” and, pursuant to Rule 5(a), the mother’s amended petition had to be personally served on the father in compliance with Rule 4.
“Strict compliance regarding service of process is required,” Aaron v. Aaron, 571 So.2d 1150, 1151 (Ala.Civ.App. 1990), and “failure of proper service under Rule 4, A[la]. R. Civ. P., deprives a court of jurisdiction and renders [a] judgment by default void.” Shaddix v. Shaddix, 603 So.2d 1096, 1099 (Ala.Civ.App.1992); see also Bunbury v. Bunbury, 553 So.2d 612 (Ala.Civ.App.1989).
“One of the requisites of personal jurisdiction over a defendant is ‘perfected service of process giving notice to the defendant of the suit being brought.’ Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 884 (Ala.1983). A judgment rendered against a defendant in the absence of personal jurisdiction over that defendant is void. Satter-field v. Winston Industries, Inc., 553 So.2d 61 (Ala.1989).”
Horizons 2000, Inc. v. Smith, 620 So.2d 606, 607 (Ala.1993). The record clearly indicates that service of the amended petition in compliance with Rule 4 was never attempted, much less effected. The default judgment, insofar as it adjudicated the mother’s claims that the father was in contempt of the July 2004 judgment, that she was entitled to the claimed arrearages of child support and medical expenses, and that she as entitled to an attorney fee was entered without jurisdiction over the father. Accordingly, the trial court erred in failing to set aside that portion of its judgment pertaining to those claims asserted in the mother’s amended petition, and its denial of the father’s Rule 55(c) motion as to those claims is therefore reversed.
The above conclusion does not resolve the entire appeal, however. The father unquestionably had notice of the mother’s petition seeking modification of his child-support obligation. He contends that he did not receive notice of the mother’s motion seeking to have the action set for trial or receive a copy of the scheduling order setting the trial. The father did not answer the mother’s petition or appear at the trial on the matter, and the trial court entered a default judgment that computed a new child-support obligation for the father. The father’s postjudgment challenge to that portion of the judgment modifying his child-support obligation was, as we have noted earlier, a Rule 55(c) motion, which motion the trial court allowed to be denied by operation of law.
The father argues that the default judgment should be considered void because, he says, the failure of the mother to serve him with her motion seeking to have the action set for trial and the failure of the trial court clerk to serve him with the scheduling order deprived him of one of the hallmarks of due process — notice. Ex parte Weeks, 611 So.2d 259, 261 (Ala.1992) (“It is generally understood that an opportunity for a hearing before a competent and impartial tribunal upon proper notice is one of the essential elements of due process.”). The father did not argue in his postjudgment motion or its amendments that he had been denied due process because he was not notified of the mother’s motion or of the scheduling order. This failure would typically preclude our review of this issue. See Tucker v. State, 445 So.2d 311, 314 (Ala.Civ.App.1984) (stating that an appellate court will not consider a constitutional argument raised for the first *760 time on appeal unless the argument indicates an absence of subject-matter jurisdiction). However, as he points out in his second application for rehearing, the father raised his due-process argument in the trial court in his “Response to [the Mother’s] Motion to Reinstate Attachment and Previous Orders of this Honorable Court,” which was filed on July 26, 2012, in response to the mother’s attempt to have the father incarcerated after the father was released from incarceration based on his successful habeas corpus petition.
The father stated in that motion that “[granting [the mother’s] motion violates [the father’s] constitutional due process rights” and also alleged that, “[the father] did not receive notice concerning prior pleadings and orders.” At the close of the motion, the father, in addition to requesting that the mother’s motion seeking that the father be incarcerated again be denied, also requested that the trial court vacate all of its prior orders “pursuant to Rule 59.”[6] Thus, because the argument was raised before the trial court, although in a separate motion not specifically labeled as a postjudgment motion, we will address the father’s due-process argument.[7]
The father relies on Rule 5(a) and Rule 77(d), Ala. R. Civ. P., to support his argument that he was entitled to notice of the mother’s motion to set the action for trial and the scheduling order. Although those rules generally require that pleadings and orders be served on parties to an action, both rules specifically state that service of a pleading or an order need not be made on parties “in default for failure to appear.” See Rule 5 (“No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.”) and Rule 77(d) (“Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail or by electronic transmittal in the manner provided for in Rule 5 upon each party who is not in default for failure to appear....”). As we determined earlier, the father was “in default for failure to appear” because he had failed to answer the mother’s petition.
The father further argued in his first application for rehearing that, based on Cornelius v. Browning, 85 So.3d 954 (Ala.2011), the default judgment should be set aside because it was entered in violation of his due-process rights. If the father were correct that his situation mirrored that of the defendant in Cornelius, we might be inclined to agree. However, the defendant in Cornelius had appeared in the action by filing an answer; thus, the failure to serve him with the motion for a default judgment deprived him of due process. Cornelius, 85 So.3d at 959-60. The father, however, did not appear, and he was not entitled to service of the mother’s motion seeking a trial date under Rule 5(a) or of the scheduling order under Rule 77(d). Thus, we cannot agree that the *761 failure of the mother and the trial court clerk to serve the father with either the mother’s motion or the scheduling order amounts to a denial of his due-process rights such that the judgment should be set aside.
Generally, this court reviews the denial of a Rule 55(c) motion to determine whether the trial court abused its discretion in denying the motion. Martin v. Crumpton, 883 So.2d 700, 703 (Ala.Civ.App.2003). We consider whether the trial court, has demonstrated its consideration of the factors set out in Kirtland v. Fort Morgan Authority Sewer Service, Inc., 524 So.2d 600 (Ala.1988).[8] In situations like the one in the present case, when the trial court could not have considered the Kirt-land factors because the Rule 55(c) motion was denied by operation of law, this court had, in the past, reversed the denial of the Rule 55(c) motion and remanded the cause for the trial court to consider the Kirtland factors. See Richardson v. Integrity Bible Church, Inc., 897 So.2d 345, 349 (Ala.Civ.App.2004) (collecting cases). As we more recently explained in Brantley v. Glover, 84 So.3d 77, 81 (Ala.Civ.App.2011),
“[hjowever, in order to trigger the mandatory requirement that the trial court consider the Kirtland factors, the party filing a motion to set aside a default judgment must allege and provide arguments and evidence regarding all three of the Kirtland factors. See Carroll v. Williams, 6 So.3d 463, 468 (Ala.2008) (‘Because Carroll has failed to satisfy his initial burden under the Kirtland analysis [of providing allegations and evidence relating to all three Kirtland factors], we will not hold the trial court in error for allowing Carroll’s motion to set aside the default judgment to be denied by operation of law without having applied the Kirtland analysis.’). See also Maiden v. Federal Nat’l Mortg. Ass’n, 69 So.3d 860, 867 n. 3 (Ala.Civ.App.2011) (noting that we will not reverse the denial by operation of law of a motion to set aside a default judgment when the mov-ant fails to argue the existence of the Kirtland factors in his or her motion).”
(Footnote omitted.)
This case mirrors the situation in Brantley. Like the movant in Brantley, the father, in his motion and amended motions, arguably set forth a meritorious defense to the child-support-modification petition by asserting and providing evidence indicating that the father had lost his employment with Alabama Power Company and that he was now making $700 per month. See Brantley, 84 So.3d at 81-82. The father in the present case, like the movant in Brantley, also argued that his conduct was not culpable when he asserted that he had not received a copy of the scheduling order and that he did not know about the trial setting for that reason. See id. at 82. However, like the movant in Brantley, the father never asserted, alleged, or argued in his motion or amended motions that the mother would not be unfairly prejudiced if the default *762 judgment were set aside. See id. Accordingly, we cannot conclude that the father’s motion and amended motions triggered the trial court’s duty to analyze the Kirbland factors before denying the father’s Rule 55(c). motion. See id. We therefore affirm the denial of the father’s Rule 55(c) motion insofar as it relates to the portion of the judgment modifying his child-support obligation.
APPLICATION GRANTED; OPINION OF MAY 10, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and MOORE and DONALDSON, JJ., concur.
PITTMAN, J., recuses himself.*

. The June 29, 2012, judgment actually awarded the mother $303 in costs; however, the trial court entered an order on July 5, 2012, pursuant to Rule 60(a), Ala. R. Civ. P., correcting a clerical error and reducing the *756 amount of costs awarded in the judgment to $267.

.The father relied on Rule 59, Ala. R. Civ. P., in his motion, but, because the judgment entered by the trial court was, in effect, a default judgment, see Triple D Trucking, Inc. v. Tri Sands, Inc., 840 So.2d 869, 871 n. 2 (Ala. 2002) (construing a judgment entered in favor of a plaintiff after the failure of the defendants to appear as a default judgment), we construe his motion seeking to vacate the judgment as a motion to set aside a default judgment under Rule 55(c). See R.I.G. v. S.S.W., 42 So.3d 747, 753 (Ala.Civ.App.2009) (treating a motion styled as a Rule 59 motion as a Rule 55(c) motion when the motion sought "the type of relief properly sought in a motion filed pursuant to Rule 55(c),” which permits a trial court to set aside a default judgment); see also Englebert v. Englebert, 791 So.2d 975 (Ala.Civ.App.2000) (construing a motion filed within 30 days of the entry of a default judgment as a Rule 55(c) motion as opposed to a Rule 60(b) motion); see, generally, Ex parte Mutual Sav. Life Ins. Co., 765 So.2d 649, 650 (Ala.1998) (stating that an appellate court "looks to the essence of a motion, not just to its title, to determine how the motion should be treated under our Rules of Civil Procedure”).

. The record reflects that the father ultimately sought a writ of habeas corpus from a different circuit court judge, which was granted.

. We note that the State Judicial Information System detail sheet reflects that the post-judgment motion was disposed of by separate order on July 31, 2012. However, no separate order appears in the record on appeal, and, after a request from this court’s clerk’s office, the Jefferson Circuit Clerk searched its records and found no separate order. Thus, because we have no order indicating whether the postjudgment motion was granted or denied, we must conclude that it was not disposed of by the trial court on July 31, 2012, or on any other date.
Moreover, Rule 59.1 provides that a post-judgment motion that is not ruled on by the court within 90 days is deemed denied at the expiration of the 90-day period. The 90th day following the father's filing of his postjudgment motion on July 15, 2012, was Saturday, October 13, 2012. Therefore, the father's postjudgment motion was deemed denied on Monday, October 15, 2012. See First Alabama Bank v. McGowan, 758 So.2d 1116 (Ala.Civ.App.2000), and Richburg v. Cromwell, 428 So.2d 621 (Ala.1983); see also Williamson v. Fourth Ave. Supermarket, Inc., 12 So.3d 1200, 1203-04 (Ala.2009).

. As our supreme court has noted, because " 'the Alabama Rules of Civil Procedure are modeled on the Federal Rules of Civil Procedure, federal decisions are highly persuasive when [an appellate court is] called upon to construe the Alabama Rules.' " Image Marketing, Inc. v. Florence Television, L.L.C., 884 So.2d 822, 825 (Ala.2003) (quoting City of Birmingham v. City of Fairfield, 396 So.2d 692, 696 (Ala.1981)).

. As explained in note 2, supra, the father was actually seeking relief from the entry of a default judgment and was therefore proceeding under Rule 55(c).

. As earlier noted, we construe a motion by its substance to determine what type of motion it is and to determine how to treat the motion. See Ex parte Mutual Sav. Life Ins. Co., 765 So.2d 649, 650 (Ala.1998) (stating that an appellate court "looks to the essence of a motion, not just to its title, to determine how the motion should be treated under our Rules of Civil Procedure”). Thus, at least a portion of the father’s July 26, 2012, motion could be construed as, in essence, a Rule 55(c) motion claiming that he had not received proper notice of the mother's motion and the orders of the trial court.

. Our supreme court has explained the process envisioned by Kirtland:
"The trial court must ... apply a three-factor analysis first established in Ex parte Illinois Central Gulf R.R., 514 So.2d 1283 (Ala.1987), in deciding whether to deny a motion to set aside a default judgment. Kirtland, 524 So.2d at 605. The broad discretionary authority given to the trial court in making that decision should not be exercised without considering the following factors: '1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct.’ 524 So.2d at 605."
Zeller v. Bailey, 950 So.2d 1149, 1152-53 (Ala.2006).