BRYAN, Judge.
D.M.TJ.W.D. (“the mother”) appeals from a judgment of the Lee Juvenile Court (“the juvenile court”) that terminated her parental rights to two of her children. On appeal, the mother argues that the judgment terminating her parental rights is void because the juvenile court lacked personal jurisdiction over her. She also argues that the judgment is erroneous because it is based on inadmissible hearsay.
The record on appeal reveals the following pertinent facts and procedural history. On October 25, 2010, the Lee County Department of Human Resources (“DHR”) filed a petition to terminate the mother’s parental rights to three children:[1] G.B.D.J. (“G.J”), born in March 1997; K.M.K.J. (“K.J.”), born in February 1998; and M.P.R.J. (“M.J.”), born in December 2000.[2] In the petition, the mother’s address was listed as being in Phenix City, and DHR requested that the mother be served by personal service pursuant to Rule 4.1, Ala. R. Civ. P.
On November 10, 2010, the mother, through an attorney appointed on her behalf, filed an answer to DHR’s petition to terminate her parental rights and her first request for discovery from DHR.
On January 18, 2011, DHR filed an amended petition to terminate the mother’s parental rights. In the amended petition, DHR alleged that the mother’s parental rights to G.J. no longer needed to be terminated because he had been placed in a home with a relative. Thus, the only amendment to the October 2010 petition was to request a judgment terminating the mother’s parental rights to only K.J. and M.J.
On April 19, 2011, DHR filed a second amended petition to terminate the mother’s parental rights. In the April 2011 second amended petition, DHR requested that the mother’s parental rights to only M.J. be terminated because K.J. had been placed in a home with a relative.
On April 20, 2011, the mother filed a motion requesting leave to file an amended answer to DHR’s amended petition to terminate her parental rights. In the motion, the mother’s attorney alleged that he had not had contact with the mother since before DHR filed a petition to terminate the mother’s parental rights, that the mother’s whereabouts were unknown to him, and that he had become aware of certain defenses that the mother could raise. The juvenile court granted the mother’s motion for leave to file an amended answer. In her amended answer, the mother raised, for the first time, the defenses of lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service of process, failure to state a claim upon which relief can be granted, and/or failure to join a necessary party. See Rule 12(b), Ala. R. Civ. P.
On April 22, 2011, DHR filed a motion to continue the termination hearing that had been scheduled for April 26, 2011, because the mother had not been served with the petition to terminate her parental rights. *1136 The juvenile court granted DHR’s motion and rescheduled the final hearing for July 21, 2011.
On April 28, 2011, DHR filed a motion for service of process by publication on the mother and the alleged father of M.J. Attached to DHR’s motion was an affidavit alleging that the mother’s last known address was in Phenix City, that the mother’s present location was unknown, that a process server had been unable to personally serve the mother, that service of process had not been completed within 90 days of the filing of the petition to terminate the mother’s parental rights, that the child subject to the proceeding had been abandoned in Alabama, and that the mother’s whereabouts could not be ascertained by due diligence. On May 3, 2011, the juvenile court granted DHR’s motion to serve the mother by publication in the Auburn Villager and in the Citizen of East Alabama, two local newspapers in Auburn and Phenix City, respectively.
On July 12, 2011, the mother filed a second amended answer in response to DHR’s second amended petition to terminate the mother’s parental rights to M.J., raising the same Rule 12(b) defenses that had been raised in her first amended answer.
On July 21, 2011, the juvenile court conducted a hearing on DHR’s petition to terminate the mother’s parental rights to M.J., and the mother and her attorney were present at that hearing. At the hearing, the attorney for DHR stated on the record that the mother had been served by publication and that she had been personally served with process by a sheriffs deputy on the day of the hearing. The mother’s attorney stated that the mother was not waiving her service-of-process arguments by her presence at the hearing because, he alleged, she had been involuntarily brought to the hearing from the Lee County Jail.[3] The mother’s attorney also argued that service of process by publication was improper because DHR had not shown “the diligence the state did in order to serve by publication.” The mother’s attorney asked that the action be dismissed, but, in light of the fact that the mother had been personally served on the morning of the hearing, he also requested a continuance of the hearing. The mother’s attorney alleged that the mother had been arrested two or three weeks earlier on a failure-to-pay-child-support charge, that he had made contact with her at the jail two weeks earlier, and that the mother had not been aware of the termination petition at that time.
DHR and MJ.’s guardian ad litem objected to the mother’s motion to continue. The juvenile court heard arguments from M.J.’s guardian ad litem and testimony from Beth Smith, a caseworker in the foster-care unit with DHR, about the mother’s failure to maintain contact with DHR and Smith’s inability to locate the mother using the last known address and telephone numbers that the mother had given DHR. Based on that evidence, the juvenile court denied the mother’s request for a continuance. After the juvenile court denied the motion to continue, the mother, under oath, stated that she waived her right to be present during the remainder of the proceedings and that she under *1137 stood that she would not able to assist her attorney in her defense.
DHR began presenting its case through the testimony of Smith, who had been assigned the mother’s case in October or November 2010. Smith testified that M.J. had been placed in foster care on April 7, 2009. The mother’s attorney objected to Smith’s testifying regarding any event that occurred before she was assigned the case because she could not testify from personal knowledge. M.J.’s guardian ad litem attempted to submit DHR’s allegedly 600-page case file into evidence as a business record because the DHR caseworkers who had been assigned the case in 2009 and most of 2010 no longer worked for DHR. The juvenile court did not admit the entire case file, but it asked the parties to file briefs regarding its admissibility and continued the hearing to a later date.
On September 2, 2011, the mother filed an objection to a scheduled court date of September 22, 2011, and requested a later court date because she was, at that time, incarcerated in the Lee County Jail and wanted additional time to improve her circumstances. The court apparently granted that motion.
On September 9, 2011, DHR filed a third amended petition to terminate the mother’s parental rights. DHR alleged that a relative resource for KJ. was no longer available, that K.J. was in foster care, and that the mother’s parental rights to K.J. should be terminated.
On December 9, 2011, DHR filed an amended motion for service of process by publication and an affidavit in support of its motion that stated in its entirety:
“1. That the Third Amended Complaint for Termination of Parental Rights was filed in this case on September 9, 2011, and service of process was not completed within 90 days of said filing;
“2. That the children in the above named cases[, M.J. and K.J.,] have had no contact with the parents, or alleged parents, named herein for at least one year, and that the aforementioned children have been abandoned pursuant to Code of Alabama § 12-15-801; and
“8. That the whereabouts of the aforementioned parents, or alleged parents, are unknown.”
The juvenile court conducted a pretrial hearing on December 15, 2011, regarding DHR’s petition to terminate the mother’s parental rights to M.J. and K.J. At that hearing, the mother’s attorney objected to DHR’s motion for service of process by publication because the affidavit filed by DHR failed to state what attempts had been made to locate the mother. He alleged that the mother was in jail in September 2011 when the third amended petition was filed, that DHR had an open child-support case involving the mother, and that DHR should at least have to show at what address service on the mother had been attempted and what efforts DHR had made to serve the mother before service of process by publication could be utilized. In response, the attorney for DHR stated that DHR had not had the paperwork ready to serve the mother while she was in jail, that DHR did not know where the mother was presently located, and that the mother had not contacted DHR to check in or leave any information.
The juvenile court agreed that DHR’s affidavit made only conclusory statements about the mother’s whereabouts being unknown to DHR and did not include any evidence establishing, or even a conclusory statement indicating, that the whereabouts of the mother could not be ascertained with reasonable diligence as required by § 12-15-318, Ala.Code 1975. Accordingly, DHR presented the testimony of Smith to *1138 provide evidence of the efforts she had made to locate the mother. Smith testified that she had checked the Medicaid system and the “food-stamp” system in Alabama to see if there was an address for the mother since her release from jail but that she had been unsuccessful in locating an address for the mother. Smith testified that she had heard that the mother’s oldest child and her baby were living with the mother, so Smith had checked the Medicaid and “food-stamp” systems using the mother’s grandchild’s name to try to get an address, but she had not been successful. Smith stated that she had also attempted to locate the mother’s oldest child in an attempt to locate the mother, but she had not been successful.
Smith further testified that she had had an address for the mother in Georgia at some point, but she admitted that she had not called the Georgia Division of Family and Children Services (“DFCS”), the equivalent of DHR in Alabama, to find information about the mother. Smith also admitted that she was aware that the mother had a child-support case pending at the time of the hearing that was being prosecuted by DHR but that she had not recently accessed any records from the child-support-enforcement division of DHR to find information about the mother. When asked why she had not checked DHR’s own records, she responded that she “just ha[d not] done it.” Smith also admitted that she had not attempted to contact the mother while she was in jail.[4]
In response to questioning by the juvenile-court judge, Smith stated that there was not a reason that she could not check the child-support-enforcement records to try and find an address for the mother. She also stated that it was “not easy” to contact another state to try to get information. At the conclusion of the hearing, the juvenile-court judge stated: “I want you to check the child support records, see what you can find, try to make a call to DFCS. If you get stonewalled, put it in an affidavit that you got stonewalled. If you get a response, put it in an affidavit what response you got.” After discussing a date for the final hearing, counsel for DHR stated to the juvenile-court judge: “You want us to contact child support and DFCS in Georgia; is that correct?” In response the juvenile-court judge stated: “Yes. And just in your affidavit report — in your affidavit just report back what the result of that was.”
On December 16, 2011, the juvenile court entered an order after the pretrial hearing. The juvenile court set the matter for trial on April 19, 2012, “the same date that the [m]other was last served with a [cjoui't date on these matters.” Regarding DHR’s motion for service by publication, the juvenile court ordered DHR to “submit evidence within [seven] days as to its queries with DHR child support [and DFCS]....” On the same date, DHR filed an amended motion for service of process by publication with a supporting affidavit. However, the affidavit attached to the motion was identical to the affidavit filed by DHR on December 9, 2011, before the pretrial hearing — the same affidavit that the juvenile court had determined did not meet the standard set forth in § 12-15-318 during the December 15 pretrial hearing. On December 22, the mother filed a third amended answer in response to DHR’s third amended petition, raising the same Rule 12(b) defenses that she had raised in her first and second amended answers.
*1139 On January 17, 2012, the juvenile court granted DHR’s request to serve the mother by publication in the Auburn Villager in Auburn, the Citizen of East Alabama in Phenix City, and the Tipton Conservative in Tipton, Iowa. On February 27, 2012, the juvenile court entered an amended order granting DHR’s motion to serve the mother by publication in the Auburn Villager, the Citizen of East Alabama, the Tipton Conservative, and the Columbus Ledger-Enquirer in Columbus, Georgia. All four newspapers filed affidavits of publication by April 13, 2012.
The juvenile court conducted a final hearing on April 19, 2012. Smith testified that, on December 27, 2011, she had checked with the child-support division of DHR and that that division had two possible addresses for the mother — one in Phe-nix City and one in Columbus, Georgia. She learned that the mother had changed her name from D.W., which was the name she was known by during the pendency of the termination proceeding, to R.D. Smith stated that she had mailed certified letters using both names to both addresses asking the mother to contact her. The same day, she contacted DFCS in Muscogee County, Georgia, and asked if a representative would go to the address Smith had found for the mother in Columbus to see if the mother actually lived there. In January 2012, Smith got the return receipt from the certified mail back from the address in Columbus with the mother’s signature “R.D.” on the return receipt. Smith received a call from the mother in February 2012, and the mother inquired about the address of K.J.’s father’s girlfriend because she wanted to file harassment charges. Smith told the mother that the final hearing was scheduled for April 19, but she did not ask the mother any questions. Smith admitted that she had not submitted this information by affidavit after the December 15, 2011, pretrial hearing, and she stated that she had not done so because she had included that information in a court report that she had filed with the juvenile court on December 27, 2012, and she thought that she was only required to demonstrate to the court her efforts to locate the mother.
DHR presented evidence indicating that it had attempted service on the mother by a private process server on February 22, 2012, at the address in Columbus at which the mother had accepted the certified letter and that it had again attempted service on the mother through the Muscogee County sheriffs department on February 24, 2012. The juvenile court noted that the court file reflected that service had been attempted on those dates and had failed. Service by certified mail sent to the address in Columbus on March 19, 2012, was returned to DHR.
Also at the April 19, 2012, hearing, the guardian ad litem for M.J. withdrew her motion to submit DHR’s entire case file as evidence in light of DHR’s stipulation that it would present evidence to support the petition to terminate the mother’s parental rights to M.J. and K.J. based only on evidence of events that occurred after July 21, 2011, i.e., the date of the last hearing.
On May 2, 2012, the juvenile court entered an order terminating the mother’s parental rights to K.J. and M.J. In its judgment, the juvenile court found that the mother had been properly served and that it had personal jurisdiction over the mother and subject-matter jurisdiction over the petition. The juvenile court further stated that, “[a]fter hearing all ... the evidence presented on April 19, 2012, the [c]ourt hereby determines that it is in the best interest of ... [K.J. and M.J.] that the parental rights of the mother ... be terminated.” Without filing a postjudgment *1140 motion, the mother timely filed a notice of appeal to this court.
We will first consider the mother’s argument that the juvenile court’s judgment terminating her parental rights to M.J. and K.J. is void because the juvenile court lacked personal jurisdiction over her because she was never properly served notice of DHR’s petition to terminate her parental rights.
“Our supreme court has recognized that
“ ‘[o]ne of the requisites of personal jurisdiction over a defendant is “perfected service” of process giving notice to the defendant of the suit being brought.” “When the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed correctly and legally.” A judgment rendered against a defendant in the absence of personal jurisdiction over that defendant is void.’
“Horizons 2000, Inc. v. Smith, 620 So.2d 606, 607 (Ala.1993) (citations omitted).”
R.M. v. Elmore Cnty. Dep’t of Human Res., 75 So.3d 1195, 1199 (Ala.Civ.App.2011).
Initially, we note that the mother did not waive the defense of lack of personal jurisdiction by failing to raise it in her first responsive pleading, i.e., her answer to DHR’s October 25, 2010, petition to terminate her parental rights that was filed on November 10, 2010. The record reveals that the mother sought leave to amend her answer to include the defense of lack of personal jurisdiction, that DHR did not object to that motion, and that the juvenile court allowed the mother to amend her answer. Our supreme court has held:
“Rule 12[, Ala. R. Civ. P.,] and Rule 15[, Ala. R. Civ. P.], when read together, allow a defendant to amend an answer to include a Rule 12(b) defense, which is normally asserted, at the option of the pleader in the initial responsive pleading or in a motion filed before the initial responsive pleading, provided that the motion to amend is filed more than 42 days before trial.
“ ‘ “Therefore, any defense in law or in fact available to a party at the time he serves his responsive pleading should be asserted. But the policy of compelling the assertion of defenses by responsive pleading is not absolute. The liberal amendment policies under Rule 15 allow a party to add defenses to his responsive pleading that have been overlooked by mistake or neglect or that have become available to him after he has served his pleading, provided that the amendment does not prejudice the opposing party.” ’
“C. Wright & A. Miller, Federal Practice and Procedure § 1348, at 538 (1969).”
Ex parte Fidelity Bank, 893 So.2d 1116, 1120 (Ala.2004). See also D.L.C. v. C.A.H., 764 So.2d 562, 564 (Ala.Civ.App.1999) (holding that a father acting pro se did not waive the defense of lack of personal jurisdiction even though he did not raise in it in his first responsive pleading because a subsequently filed motion to dismiss could be considered as an amendment to the answer filed by the father). Accordingly, we conclude that the mother did not waive her jurisdictional argument.
Rule 1(A), Ala. R. Juv. P., provides, in pertinent part: “These Rules ... shall govern the procedure for all matters in the juvenile court. If no procedure is specifically provided in these Rules or by statute, the Alabama Rules of Civil Procedure shall be applicable to those matters that are *1141 considered civil in nature.” Regarding the issuance of notice and service of summons, Rule 18(A), Ala. R. Juv. P., provides, in pertinent part:
“(A) Summons. Service of summons shall be pursuant to the Alabama Rules of Civil Procedure, except as hereinafter provided:
“(1) After a petition alleging that a child is delinquent, in need of supervision, or dependent has been filed, the clerk of the circuit court shall ensure that summonses are issued ... to the parent or parents ... requiring them to appear personally before the juvenile court at the time fixed to answer or testify as to the allegations of the petition. A copy of the petition shall be attached to each summons.
“(2) There shall be no service by publication of any proceeding in the juvenile court except in proceedings to terminate parental rights.
“(8) The service of the summons shall give the juvenile court jurisdiction over the persons served, but the inability to serve any party shall not deprive the court of jurisdiction to proceed.
“(4) An adult who is a party may waive service of the summons by written stipulation or by voluntary appearance at the hearing.”
On appeal, the mother does not contend that the service of process she received on July 21, 2011, before the start of the hearing conducted on that date, was insufficient or otherwise improper. See Rule 4(c)(1), Ala. R. Civ. P. (providing for service on an individual defendant); and Gary v. Crouch, 923 So.2d 1130, 1136 (Ala.Civ.App.2005) (citing Boshell v. Keith, 418 So.2d 89, 92-93 (Ala.1982)) (“[Tjhis court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.”). Although it is not clear in the record, we can assume that the mother was served with the petition that was then pending before the juvenile court, i.e., the petition to terminate the mother’s parental rights to M. J. only. The juvenile court clearly indicated at the start of that hearing that the parties were present “in the matter of [M.J.] ” and that they were there on a “petition to terminate parental rights in regards to [M.J.] filed by [DHR].” Accordingly, we conclude that the mother received service of process of DHR’s petition to terminate her parental rights to M.J. on July 21, 2011, when she received personal service before the start of the July 21, 2011, hearing.
However, we will not go so far as to conclude that the mother was given notice, at that time, that DHR intended to terminate her parental rights to K.J. The record clearly reflects that DHR did not, after it removed KJ.’s name from the petition to terminate the mother’s parental rights in April 2011, amend the petition to terminate the mother’s parental rights to include K.J. until September 9, 2011. Thus, we agree with the implicit determination of the juvenile court, DHR, and the mother, that the mother was entitled to service of process of the third amended petition pursuant to Rule 13(A)(1) and Rule 4, Ala. R. Civ. P., insofar as it included an additional request that the juvenile court terminate the mother’s parental rights to K.J. in addition to M.J.
It is undisputed from the record that the only way that the mother would have been served notice of DHR’s petition to terminate her parental rights to K.J. is if service of process by publication was proper. In determining whether the juvenile court properly allowed the mother to be served notice of DHR’s petition to terminate her parental rights to K.J. by publication, we are guided by this court’s decision in L.K. *1142 v. Lee County Department of Human Resources, 64 So.3d 1112 (Ala.Civ.App.2010). In L.K., this court determined that § 12-15-318, Ala.Code 1975, not Rule 4.3, Ala. R. Civ. P., “regulates the procedure for service by publication in termination-of-parental-rights cases.” Id. at 1114. Section 12-15-318 provides:
“(a) Except as otherwise provided by the Alabama Rules of Juvenile Procedure and this section, service of process of termination of parental rights actions shall be made in accordance with the Alabama Rules of Civil Procedure.
“(b) If service of process has not been completed within 90 days of the filing of the termination of parental rights petition, the petitioner shall request service by publication.
“(c) Service of process by publication may not be ordered by the juvenile court unless the following conditions are met:
“(1) The child who is thé subject of the proceedings was abandoned in the state.
“(2) The state or private department or agency having custody of the child has established, by evidence presented to the juvenile court, that the absent parent or parents are avoiding service of process or their whereabouts are unknown and cannot be ascertained with reasonable diligence.
“(d) Service shall be made by publication in a newspaper of general circulation in the county of the juvenile court having jurisdiction and in the county of the last known address of the parent or parents of the abandoned child, at least once a week for four consecutive weeks.”
In L.K., we construed § 12-15-318 for the first time and held:
“Section 12-15-318(c) clearly provides that two conditions must be satisfied in order for a juvenile court to grant a motion to serve a parent by publication in a termination-of-parental-rights case. First, the juvenile court must find that the child has been abandoned in this state. Second, the juvenile court must find, based on evidence presented to it by DHR or by any other person having legal custody of the abandoned child, ‘that the absent parent or parents are avoiding service of process or their whereabouts are unknown and cannot be ascertained with reasonable diligence.’ § 12-15-318(c)(2). If those conditions are met, the juvenile court can then order service by publication as set out in § 12-15-318(d).”
Id. at 1114-15 (emphasis added).
On appeal, as she did during the proceedings below, the mother argues that DHR failed to present evidence pursuant to § 12-15-318(c)(2) to establish that the mother’s whereabouts could not be ascertained with reasonable diligence.
The record reveals that, on December 9, 2011, 91 days after DHR had filed its September 9 third amended petition, DHR filed an amended motion for service by publication alleging that the affidavit attached to the motion demonstrated “that the whereabouts of the parents ... are unknown and cannot be ascertained with reasonable diligence.” However, the affidavit attached to the motion stated only that service of process had not been completed in 90 days, that M.J. and K.J. had had no contact with “the parents or the alleged parents” for at least 1 year, that M.J. and K.J. had been abandoned in the state, and that the whereabouts of the “aforementioned parents or alleged parents” were unknown.
The juvenile court subsequently conducted a pretrial conference on December 15, 2011, at which the mother’s attorney objected to DHR’s motion for service of process by publication essentially because DHR had not complied with § 12-15-318(c)(2). The juvenile court agreed *1143 that DHR had made only eonclusory statements about the mother’s whereabouts being unknown in its affidavit. Accordingly, Smith gave testimony under oath concerning her efforts to locate the mother. The juvenile court was apparently unsatisfied by DHR’s efforts to locate the mother because it specifically instructed Smith to make additional efforts to locate the mother and to file an affidavit, i.e., evidence, setting forth the additional efforts she had made and whether she was successful in locating the mother. We agree that the evidence presented by DHR on December 15, 2011, did not establish that, at the time of that hearing, DHR had made reasonably diligent efforts to locate the mother.
It is undisputed that DHR did not present the juvenile court with an affidavit of its further efforts to locate the mother. Despite this, the juvenile court issued an order permitting service of process by publication on January 17, 2012. The record indicates that the juvenile court received a notice of failure of service on the mother on February 22 and February 24, 2012, before it issued an amended order on February 24, 2012, allowing the mother to be served with process by publication, including notice through a newspaper in Columbus. However, the record reveals that, at that time, the juvenile court had before it no additional evidence indicating that DHR had taken the additional steps the juvenile court had deemed necessary to try to locate the mother. Without additional evidence, there was no way for the juvenile court to know the significance of the failure of service at a specific address at the time it issued its order allowing DHR to serve the mother notice by publication. That evidence was not provided until Smith presented additional testimony at the April 19, 2012, hearing, almost two months after the juvenile court had allowed service of process by publication. Accordingly, we conclude that DHR failed to establish by evidence presented to the juvenile court that the whereabouts of the mother could not be ascertained with reasonable diligence before service of process by publication was ordered by the juvenile court.
This court is gravely concerned by DHR’s failure to comply with the plain language of § 12-15-318 even after the juvenile court made it perfectly clear that DHR needed to establish by evidence, i.e., an affidavit, that the mother’s whereabouts could not be ascertained with reasonable diligence. As we stated in L.K.:
“Just as strict compliance is required regarding the civil rules of service of process, see Johnson v. Hall, 10 So.3d 1031, 1037 (Ala.Civ.App.2008), so must we also require strict compliance with the statute regarding service of process applicable to termination-of-parental-rights proceedings. Those proceedings strike at the very heart of the family unit. See Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990). In a termination-of-parental-rights case, the state is seeking to irreversibly extinguish a fundamental liberty interest more precious than any property right, the right to associate with one’s child. Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Unlike a judgment divesting a parent of custody, a judgment terminating parental rights is immediate, permanent, and irrevocable. See C.B. v. State Dep’t of Human Res., 782 So.2d 781, 785 (Ala.Civ.App.1998) (‘termination of parental rights is an extreme action that cannot be undone; it is permanent’). Out of respect for those fundamental rights, due process must be observed. Santosky, supra.”
64 So.3d at 1115.
In light of our determination that DHR did not strictly comply with § 12-15-318(c)(2), we conclude that DHR did not perfect service on the mother insofar as DHR petitioned to terminate the mother’s *1144 parental rights to K.J. Accordingly, the juvenile court did not obtain personal jurisdiction over the mother regarding DHR’s petition to terminate her parental rights to K.J., and the juvenile court’s judgment, insofar as it terminated the mother’s parental rights to K.J., is void. Because an appellate court is required to dismiss an attempted appeal from a void judgment, we dismiss this appeal with instructions to the juvenile court to vacate its May 2, 2012, judgment insofar as it terminated the mother’s parental rights to K.J. See L.K., 64 So.3d at 1116.
Because we have concluded that the juvenile court had personal jurisdiction over the mother in regard to DHR’s petition to terminate the mother’s parental rights to M.J., we will discuss the second issue raised in the mother’s appeal insofar as it pertains to the merits of the juvenile court’s judgment terminating the mother’s parental rights to M.J. The mother argues that “the entire court report/record of DHR was [in]admissible under the business record exception to the hearsay rule of evidence.” See Rule 803(6), Ala. R. Evid. The record reflects that MJ.’s guardian ad litem withdrew her request to submit DHR’s entire record of the case involving the mother and her five children and that that record was never submitted into evidence. Accordingly, the question whether such a record was admissible under Rule 803(6) is moot.
To the extent that the mother argues that some of Smith’s testimony during the July 21, 2011, hearing was inadmissible because the testimony was based on information in a “packet” that contained DHR’s entire record on the mother and that was made in anticipation of litigation, we conclude that such an error, if there was one, was harmless. See Rule 45, Ala. R.App. P. As noted above, DHR’s case file was not submitted into evidence, and the mother has not directed this court’s attention to a place in the record where Smith relied on information in the “packet” referred to in her argument to answer a question. See Rule 28(a)(10), Ala. R.App. P. (requiring an appellant to present “[a]n argument containing the contentions of the appellant ... with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on”). Moreover, at the April 19, 2012, hearing, DHR stated on the record that it intended to prove its case by presenting evidence of facts that had occurred only after the July 21, 2011, hearing. Furthermore, in its final judgment terminating the mother’s parental rights to M.J., the juvenile court indicated that its decision to terminate the mother’s parental rights was based on the evidence presented at the April 19, 2012, hearing. Accordingly, we cannot conclude that the mother has demonstrated that the juvenile court committed reversible error regarding the merits of its judgment terminating the mother’s parental rights to M.J.
Accordingly, the mother’s appeal from the judgment terminating her parental rights to K.J. is dismissed, albeit with instructions to the juvenile court to vacate its judgment insofar as it terminated the mother’s parental rights to K.J. The remainder of the juvenile court’s judgment, insofar as it terminated the mother’s parental rights to M.J., is affirmed.
APPEAL DISMISSED IN PART WITH INSTRUCTIONS; JUDGMENT AFFIRMED IN PART.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, •'without writing.

. The record indicates that the mother had 5 children but that DHR did not seek to terminate the mother’s parental rights to 2 of her 5 children because 1 child was 18 years old and a relative resource had been provided for another child.

. DHR’s petition also sought to terminate the parental rights of the natural father of G.J. and KJ. and the alleged natural father of MJ. Neither man participated in the termination proceedings, and neither man has appealed any part of the juvenile court’s judgment.

. See Rule 13(A)(4), Ala. R. Juv. P. ("An adult who is a party may waive service of the summons ... by voluntary appearance at the hearing.”). However, whether the mother was brought involuntarily to the hearing is not clear from the record. The juvenile-court judge stated on the record that he had not entered a transport order requiring the sheriff to bring the mother from the jail to the hearing, and there is no indication in the record that DHR had subpoenaed the mother to appear at the hearing.

. As set forth above, DHR was aware that the mother was in the Lee County Jail at least by July 21, 2011, and a pleading in the record filed by the mother's attorney stated that the mother was still in jail as of September 2, 2011.