DONALDSON, Judge.
J.B. (“the father”) appeals from a judgment of the Cullman Juvenile Court (“the juvenile court”) terminating his parental rights to A.B. (“the child”). We affirm the juvenile court’s judgment.
*68 T.B. (“the mother”) and the father are the unmarried parents of the child, who was born in August 2013. The mother is also the mother of K.B., the child’s half sister (“the sibling”). The Cullman County Department of Human Resources (“DHR”) became involved with the family, after receiving reports that they were living in an automobile and that the parents were abusing drugs. In December 2014, the juvenile court awarded custody of. the child and the sibling to DHR. The child and the sibling were ultimately placed with AR., the sibling’s paternal aunt. Because A.R. is not related, to the child, she and her spouse, T.R., became licensed foster parents so that the child and the sibling would not be separated.
On November 25, 2015, DHR filed in the juvenile court a petition seeking the'termination of the parental rights of the father and the mother.[1] Two attempts to serve the summons and complaint on the father were unsuccessful. Thereafter, DHR filed a motion in which it sought leave to perfect service on the father by publication. In its motion and in an attached affidavit, DHR asserted that the whereabouts of the father were unknown. The juvenile court granted DHR’s request for service by publication, and notice of the proceedings was published in the Cullman Tribune for four consecutive weeks in March and April 2016.
On June 14, 2016, the father filed his first responsive pleading—a motion to dismiss—in which he argued that the service on him was not in compliance with § 12-15-318, Ala. Code 1975, because, he asserted, the affidavit submitted by DHR had been insufficient to prove the necessity of service by publication.[2] The father asked for a hearing on the motion and for the “tejntry of an order dismissing DHR’s petition against [him] for lack of personal jurisdiction and insufficient service of process.”
A termination-of-parental-rights trial was held the next day on June 15, 2016. The judgment, entered on June 22, 2016, terminated the father’s parental rights and reads, in pertinent part:
“3. [T]he father ... was duly served with notice of [DHR’s] Petition to Terminate Parental Rights, pursuant to Alabama Code § 12—15—318, by order of this Court dated March 17, 2016.
“The Court expressly finds that [DHR] has used due diligence to explore other resources for placement of the [child] including relatives. The Court finds that placement of the [child] with relatives or some other resource is not a viable alternative to termination of parental rights since no appropriate resources exist for either temporary or permanent custody that would be in the best interest of the [child]. The parents mentioned possible relatives but no relatives appeared or testified.
“10. Testimony exhibited that relatives were contacted by DHR who declined an interview or declined to become involved.”
On June 28, 2016, the father filed a timely postjudgment motion pursuant to Rule 59, Ala. R. Civ. P. Although the juvenile court purported to deny the father’s postjudgment motion on July 14, 2016, it did not have jurisdiction to enter that order. See Rule 2(B), Ala. R. Juv. P. (providing that, absent certain exceptions not *69 relevant in this case, the failure of the juvenile court to render an order disposing of any pending postjudgment motion within 14 days constitutes a denial of such motion as of the date of the expiration of the period). The father’s postjudgment motion was denied by operation of law on July 12, 2016. The father had 14 days from July 12, 2016, to file his notice of appeal; thus, the father’s July 14, 2016, notice of appeal is timely. The father seeks this court’s review of whether the juvenile court erred by concluding that no alternative to termination of the father’s parental rights existed and by “granting DHR’s motion for service by publication.”
We first address whether the juvenile court lacked personal jurisdiction over the father because of the alleged insufficiency of service of process.
“‘Our supreme court has recognized that
“ ‘ “[o]ne of the requisites of personal jurisdiction over a defendant is ‘perfected service of process giving notice ‘to the defendant of the suit being brought.’ ‘When the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed correctly and legally.’ A judgment . rendered against a defendant in. the absence of personal jurisdiction over that defendant is void.”
“‘Horizons 2000, Inc. v. Smith, 620 So.2d 606, 607 (Ala. 1993) (citations omitted).’
“R.M. v. Elmore Cnty. Dep’t of Human Res., 75 So.3d 1195, 1199 (Ala. Civ. App. 2011).”
D.M.T.J.W.D. v. Lee Cty. Dep’t of Human Res., 109 So.3d 1133, 1140 (Ala. Civ. App. 2012).
Section 12-15-318, rather than Rule 4.3, Ala. R. Civ. P., governs the procedure for service by publication in a termination-of-parental-rights case. See L.K. v. Lee Cty. Dep’t of Human Res., 64 So.3d 1112, 1114 (Ala. Civ. App. 2010). Section 12-15-318 provides, in part:
“(c) Service of process by publication may not be ordered by the juvenile court unless at least one of the following conditions is met:
“(1) The child who is the subject of the proceedings was abandoned in the state, or ■
“(2) The state or private department or agency having custody of the child has established, by evidence presented to the juvenile court, .that the absent parent or parents are avoiding service of process or their whereabouts are unknown and cannot be ascertained with reasonable diligence.
“(d) Service shall be made by publication in a newspaper of general circulation in the .county of the juvenile court having jurisdiction and in the county of the last known address of the parent or parents of the abandoned child, at least once a week for four consecutive weeks.”[3]
In this case, DHR had asserted in its motion and supporting affidavit that the father’s whereabouts were unknown and that, with reasonable diligence, it had been *70 unable to ascertain his whereabouts. See § 12-15-318(c)(2). At the beginning of the termination-of-parental-rights trial, the juvenile court allowed the presentation of arguments regarding the father’s motion to dismiss. The father argued, as he had in his motion to dismiss, that service had been unsuccessfully attempted twice—the first summons and complaint had been returned “not served” because it was delivered to the home of his father, An.B. (“the paternal grandfather”), at which the father no longer resided, and the second summons and complaint had been returned with the notation “not in jail” after service had been attempted at the county detention center. The father argued that the affidavit of Christy Webb, a DHR employee, had contained “barebones allegations.” The father admitted that he had been “maybe difficult to locate,” but, he argued, he had not been attempting to avoid service.
DHR responded that the affidavit properly indicated that DHR had been reasonably diligent in its attempts to ascertain the father’s whereabouts and that its motion seeking leave to perfect service on the father by publication had not been “bare-bones” because DHR had provided the addresses for its unsuccessful service attempts—the paternal grandfather’s address and the address of the detention center. DHR correctly argued that it was not required to additionally prove that the father was attempting to avoid service. DHR offered the testimony of Webb and two other DHR employees, Kristen Edge and Amy Oliver, regarding DHR’s efforts to serve the father. Webb said that DHR had first attempted to serve the father at the paternal grandfather’s address and that she had had no addresses of any other relatives. Edge testified that she had made monthly attempts to contact the father through the paternal grandfather. Edge said that, in February 2016, she had learned that the father had been incarcerated and that the attempt to perfect service at the detention center had been unsuccessful because the father had been released. Edge said that the father had had her contact information and that he had never contacted DHR. Edge admitted that she had seen the father at certain hearings and that she had not tried to contact the father’s attorney; however, she said that she had utilized certain public-assistance computer databases in an attempt to locate the father. The juvenile-court judge made the following finding:
“Well, I am going to find that the efforts of the Department of Human Resources to attempt to serve the father both with personal service and the perfection of the service by publication to be sufficient under the law and that we’ll go forward with the Termination of Parental Rights hearing. I know it is the State’s responsibility to do everything that is reasonable and I do believe that based upon the testimony that we have heard today that efforts of the department were sufficient and reasonable under the circumstances of this case.”
Because the record reveals that DHR filed an affidavit alleging that the whereabouts of the father were unknown and had not been ascertained with reasonable diligence, the juvenile court’s order for service by publication was in compliance with § 12-15-318(c) and, thus, service of process was performed “ ‘correctly and legally.’” Horizons 2000, Inc. v. Smith, 620 So.2d 606, 607 (Ala. 1993) (quoting Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 884 (Ala. 1983)). The father was permitted to challenge the assertions of DHR contained in the affidavit in a hearing, and the juvenile court found that there were no deficiencies in the service of process. Therefore, the juvenile court had personal jurisdiction over the father.
*71 Next, we consider whether the juvenile court’s conclusion that no alternative to the termination of the father’s parental rights existed must be reversed.
“The determination'of whether a viable alternative to termination of parental rights exists is a question of fact to be decided by the juvenile court. See Ex parte J.R., 896 So.2d 416 (Ala. 2004). On appeal from ore tenus proceedings in a termination-of-parental-rights case,- this court presumes that the-juvenile court’s factual findings regarding viable alternatives are correct. See J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala. Civ. App. 2007). However, because of the serious nature of. a judgment severing a familial relationship, see L.M. v. D.D.F., 840 So.2d 171, 179 (Ala. Civ. App. 2002), this court conducts a ‘careful search of the record’ to determine whether such findings are supported by clear and convincing evidence. In re Moore, 470 So.2d 1269, 1270 (Ala. Civ. App. 1985). See also Columbus v. State Dep’t of Human Res., 523 So.2d 419, 421 (Ala. Civ. App. 1987); and Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). ‘Clear and convincing evidence’ is ‘ “[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.”’ L.M. v. D.D.F., 840 So.2d at 179, citing in turn Ala. Code 1975, § 6-11-20(b)(4).”
J.B. v. Cleburne Cty. Dep’t of Human Res., 991 So.2d 273, 282 (Ala. Civ. App. 2008).
The father argues that testimony demonstrated that he had a “good relationship” with the child and that they shared a bond. Our supreme court has held that a juvenile court should maintain foster care or another third-party custodial arrangement without terminating parental rights when a child shares a beneficial emotional bond with a parent and the custodial arrangement ameliorates any threat of harm presented by the parent. See Ex parte A.S., 73 So.3d 1223 (Ala. 2011). The father points to the following exchange between the father’s attorney and Edge:
“Q. Okay. And what was the relationship like between [the father] and [the child]?
“A. They had a good relationship. [The child] seemed happy to see him at visits, but [the father] didn’t come consistently.
“Q. But they were bonded to each other, were they not?
“A. They were.”
The father, however, ignores Edge’s testimony that the father had failed to visit the child since December 2015. As we have explained,
' “ ‘[i]f, notwithstanding the unfitness of a parent, there' remains a significant emotional bond between a child and an unfit parent, and it has been demonstrated that some alternative-placement resource would allow the child to visit periodically with the unfit parent so as to reap the benefit of partially preserving that relationship without incurring the harm of the child being raised on a day-to-day basis by an. unfit parent, the court would be -required to weigh the advantage of that arrangement against the advantage of termination and placement for adoption with permanent fit parents, and to decide which of these alternatives would be in the child’s best interest.’ ”
C.M. v. Tuscaloosa Cty. Dep’t of Human Res., 81 So.3d 391, 397 (Ala. Civ. App. 2011)(quoting D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 95 n. 17 (Ala. Civ. App. 2003) (plurality opinion)). Accordingly, we cannot hold that the trial court incorrectly determined, in considering the *72 child’s best interest, that the advantage of any emotional bond shared between the father and the child outweighed the termination of the father’s parental rights and placement of the child with permanent, fit parents. See C.M., 81 So.3d at 397.
DHR witnesses also testified that they had investigated potential relative resources but that none had been suitable and willing. Specifically, Edge said that the father had offered the paternal grandfather as a potential relative resource. Edge testified that the paternal grandfather remained willing to be considered; however, testimony demonstrated that the paternal grandfather is a convicted felon, and, according to Edge, placement with A.R. and T.R. was better for the child because he would not be separated from the sibling.
At the time of the termination-of-parental-rights trial, the child, who was three years old, had been out of the father’s custody, in foster care, for one and, a half years and had not seen the father in the past six months. DHR employees testified that DHR’s permanency plan for the child was adoption and that the child was adoptable.
. “We have held that, ‘at some point, [a child’s] need for permanency must outweigh repeated efforts by DHR to rehabilitate’ a parent. N.A. v. J.H., 571 So.2d 1130, 1134 (Ala. Civ. App. 1990) (citing § 26-18-7(b)(4), Ala. Code 1975). Further, ‘[i]n R.L.B. v. Morgan County Department of Human Resources, 805 So.2d 721, 725 (Ala. Civ. App. 2001), this court held that maintaining a child in foster care indefinitely is not a viable alternative to termination of parental rights.’ T.G. v. Houston County Dep’t of Human Res., [39] So.3d [1146, 1152] (Ala. Civ. App. 2009)....,”
“ ‘[Montgomery Cnty. Dep’t of Human Res. v. W.J.,] 34 So.3d [686,] 693 [ (Ala. Civ. App. 2009) ].’
“Jefferson Cnty. Dep’t of Human Res. v. L.S., 60 So.3d 308, 316 (Ala. Civ. App. 2010), Therefore, we conclude that, under [the] circumstances in this case, the juvenile court did not err by concluding that, maintaining the status quo while the mother continued to attempt to rehabilitate herself was not a viable alternative to the termination of the mother’s parental rights.”
B.M. v. Jefferson Cty. Dep’t of Human Res., 183 So.3d 157, 161 (Ala. Civ. App. 2015). Thus, we conclude that the juvenile court’s finding that there was no viable alternative to the termination of the father’s parental rights is due to be affirmed.
In conclusion, the juvenile court did not lack personal jurisdiction over the father, and the evidence supported the juvenile court’s decision to terminate the father’s parental rights. Accordingly, the juvenile court’s judgment is affirmed.'
AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

. The mother, who was incarcerated, voluntarily relinquished her parental rights to the child. She is not a party to this appeal.

. The juvenile court entered an order purporting to deny the father’s motion to dismiss on July 14, 2016. However, as explained infra, the juvenile court did not have jurisdiction to enter that order.

. Effective April 25, 2013, subsection (c) of § 12-15-318, Ala. Code 1975, was amended "by our legislature to allow proper service by publication when only one of the two conditions listed in the statute are met. See Act No. 2013-157, § 2, Ala. Acts 2013. Therefore, our holdings in L.K., 64 So.3d 1112, D.M.T.J.W.D., 109 So.3d 1133, and C.M. v. Madison County Department of Human Resources, 133 So.3d 890, 893 (Ala. Civ. App. 2013) have been superseded by § 12—15—318(c), as amended.